**KAVOUNAS v. UNITED STATES.**

No. 47787.

United States Court of Claims.

April 3, 1950.

Albert Kratzok, Philadelphia, Pa., for the plaintiff.

Frank J. Keating, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for the defendant.

HOWELL, Judge.

Plaintiff sues to recover $500, the proceeds of a Treasury note, deposited as security for a bond conditioned upon the requirements that an alien would depart from the United States by a certain time and that he would not engage in any business or occupation or employment for hire while in the United States.

On December 18, 1939, plaintiff's brother, Nicolas Kavounas, an alien and a native of Greece, arrived at the port of New York, N. Y., from Greece and applied for permission to enter the United States and remain temporarily as a visitor for pleasure. The alien was detained at Ellis Island until arrangements were made with the plaintiff for posting a bond[1] with the Immigration and Naturalization Service to guarantee the alien's departure from the United States. Plaintiff was busy at the time and he gave a friend of his, one Paul Halopoulo, $500 with which to obtain the bond. The latter deposited a $500 Treasury note as security for the bond with Halopoulo named as surety on the bond. Thereafter, Halopoulo died and his mother, as administratrix of his estate, executed a power of attorney in plaintiff's favor to obtain any moneys that might be refunded. The bond contained the following: "Now, therefore, the conditions of this obligation are such that if the said alien is admitted temporarily as a tourist or visitor for pleasure he shall not engage in any business or occupation or employment for hire, or if admitted temporarily for business he shall not engage in any business or occupation or employment other than that given as a reason for his request for temporary admission, and shall actually depart permanently from the United States, without expense to the United States, on or before February 18, 1940, and if the Immigration and Naturalization officer in charge at the port of New York shall receive from the above-bounden obligors at least five (5) days prior to such departure information as to the date thereof and name or designation of the vessel or other means of conveyance by which the alien shall depart, then this obligation to be void; otherwise to remain in full force and virtue."

Extensions of time were granted under which the alien was permitted to remain in the United States until December 10, 1940. The surety on the bond agreed that the time extensions would not release the liability on the bond. While the alien was in the United States as a temporary visitor for pleasure, he was engaged in business as a partner with another brother in the operation of a grocery store, from which store the alien derived an income averaging $125 a month.

1. 8 U.S.C.A. § 215.

In May 1942, the alien was arrested because he had remained in the United States beyond the time stated in his visitor's permit as extended. After a hearing at which it was disclosed that the alien was engaged in business, it was ordered that he be deported to Greece. Upon appeal, the Board of Immigration Appeals, on December 7, 1944, directed that the order of deportation be not entered at that time but that the alien be required to depart from the United States without expense to the Government, to any country of his choice, within six months after notification of decision.

In compliance with the order of the Board of Immigration Appeals, the alien went to Montreal, Canada, early in 1945, where he obtained an appropriate immigration visa which permitted him to enter the United States for permanent residence. On March 28, 1945, he reentered the United States.

On August 26, 1946, the Acting Commissioner of the Immigration and Naturalization Service of the United States Department of Justice ordered that the bond be considered breached because the alien had failed to depart from the United States on or before December 10, 1940, and because he had been employed during the time of his temporary admission without having secured permission to be so employed.

Plaintiff contends the original order for deportation was vacated by the Board of Immigration Appeals when it directed the order for deportation to be not entered at that time and permitted voluntary departure and subsequent legal reentry into the United States. Plaintiff's second contention is that the provision in the bond reading, "that if the said alien is admitted temporarily as a tourist or visitor for pleasure he shall not engage in any business or occupation or employment for hire * * *" should be strictly construed, and that while the alien engaged in business as a partner, it was not in any business or occupation or employment *for hire* and hence should not apply to said alien.

Defendant contends that plaintiff was not a party to the bond and hence cannot recover under Rev.Stat. § 3737, 41 U.S.C. § 15, which prohibits the transfer of a contract, or bond as here involved; secondly, since both conditions of the bond were breached by alien, plaintiff cannot recover.

■ We deal first with the defendant's second ground of defense to the plaintiff's right of recovery. We agree that both conditions of the bond were breached by the alien and hence the plaintiff is not entitled to recover.

■ As a general proposition, courts are reluctant to declare forfeitures of bonds on narrow and technical grounds, but in this case the conditions of the bond have been clearly breached as the facts plainly disclose.

In the first place, it is obvious that the alien remained in the United States beyond the extended time, which conditioned his right to remain in this country. Originally obligated to depart on or before February 18, 1940, extensions were granted which permitted him to remain until December 10, 1940. Not only did he not depart by this time but he remained in this country apparently unconcerned over the date set for his departure until he was arrested in May 1942. Thus, for a period of almost two and a half years he remained in defiance of not only his obligation to a hospitable country but of the obligation of his surety to see that he actually departed from this country by December 10, 1940.

In one respect, the record is rather complimentary to the alien—at least he was not a fugitive at large with his whereabouts unknown. He was, so far as the record shows, continuously in Reading, Pennsylvania, where he "helped" his brother run a business in which, as a partner, he had invested money as far back as 1930, and from which he drew approximately $125 per month during his entire stay in this country.

The other condition of his bond was that he not "engage in any business or occupation or employment for hire, or if admitted temporarily for business he shall not engage in any business or occupation other than that given as a reason for his request for temporary admission * * *."

Apparently the alien did not see fit at the time of his entry to give as a reason for his request for temporary admission that he wished to assist in the conduct of a business in which he had previously invested money. It may be that we are precluded from any speculation on this point, but we cannot help but wonder why this obviously valid reason was not given. It is sufficient to observe that in neglecting or choosing not to set forth this reason, the alien definitely obligated himself not to engage in any business or occupation or employment for hire.

 Plaintiff says that the words of the bond in effect mean "employment for hire" and since the alien was a partner in a business he did not engage in "any business or occupation or employment for hire." We cannot agree with this contention for the reason that the word "or" as above used is a coordinating conjunction that marks an alternative in each case. As used, it means that the obligee could not engage either in any business or any occupation or any employment for hire. Had the alien been a doctor, or lawyer, and had practiced during his temporary stay, he would have engaged in an "occupation," and had he worked as a clerk in a grocery store for wages, he would have been engaged in "employment for hire," either or both of which would violate the obligation of the bond. A partnership is a well recognized form of business association. It is defined as an agreement between two or more persons to unite their labor, skill, money, and property, or either in a lawful *business* for their mutual benefit. Hence, as an admitted partner of his brother, he was engaged in business.

The Acting Commissioner of the Immigration and Naturalization Service of the United States Department of Justice on August 26, 1946, ordered that the bond be declared breached inasmuch as the subject failed to depart within the time specified in the terms of the bond and because he had been employed without having obtained permission to be so employed.

Plaintiff would in all likelihood have rested his case at that point but for what had transpired previously before the Board of Immigration Appeals on an appeal from the order of deportation entered at the hearing after the arrest of the alien in May 1942. On December 7, 1944, the Board of Appeals directed that the order of deportation be not entered at that time but that the alien be required to depart from the United States without expense to the Government to any country of his choice within six months. At that time World War II was raging throughout the world and transportation obviously could not have been managed even in the event the Board had ordered the alien deported to the country of his origin—Greece.

In compliance with this order, the alien went to Canada where he obtained an immigration visa which permitted him to enter the United States for permanent residence and on March 28, 1945, a little over three months after the entry of the order of the Board of Immigration Appeals, he did reenter this country.

Plaintiff now says that the breach of the condition of the bond on the part of the alien to depart from this country by December 10, 1940, is now a moot question for the reason that upon appeal the Board of Appeals substituted its own order, vacated the order for deportation and permitted voluntary departure and subsequent legal reentry into the United States.

We think that this contention is unwarranted in fact and in law. When the alien was first apprehended and arrested in May of 1942, the Immigration officials of the Department of Justice, after a hearing, found that he had overstayed his visitor's permit and had engaged in business. Accordingly he was ordered deported to Greece. The alien exercised the privilege extended under the laws of the United States to those who find themselves in similar circumstances and filed an appeal. The effect of such appeal was to stay not only the entry of the order of deportation, but the forfeiture of the bond. When the Board of Appeals permitted the alien to depart to Canada, no action was taken on the bond, pending final disposition of his case.

 We do not think that the fact that the alien, as a result of the generous treat-

ment on the part of the Board of Immigration Appeals, was enabled to make a lawful reentry into the United States affects in any way the previously established breach of the obligations of his bond. This was the view taken by the Acting Commissioner of the Immigration and Naturalization Service when he ordered forfeiture, and we reach the same conclusion on the evidence as that reached by the Commissioner.

For the purposes of this decision it is not necessary for us to consider the defendant's other defense to plaintiff's right of recovery.

This petition is dismissed and judgment rendered in favor of defendant.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.