**UNITED STATES of America, Appellant,**

v.

**James P. SANDERSON, Appellee.**

**No. 15050.**

United States Court of Appeals Ninth Circuit.

Oct. 3, 1956.

2. Erie R. Co. v. Tompkins, 304 U.S. 64, 71, et seq., 58 S.Ct. 817, 82 L.Ed. 1188.

3. Chicago, R. I. & P. Ry. Co. v. Witt, 144 Okl. 246, 291 P. 59; Hane v. Mid-Continent Petroleum Corp., D.C.N.D.Okl., 43 F.2d 406, 407; Davis v. St. Louis & S. F. Ry. Co., D.C.N.D.Okl., 8 F.Supp. 519, 520.

had not sustained his burden of proving the alleged relationship, and rejected his application for admission. From the ruling an administrative appeal was taken.

Appellee Sanderson, Eng Kam's attorney, secured his release from custody pending the final disposal of the case by giving a proper bond in accordance with Section 20 of the Immigration Act of 1917.[2] Said bond was conditioned in part as follows:

"* * * that he (said alien) will deliver himself at San Francisco, California, into the custody of the same officer or some other officer of the United States Immigration and Naturalization Service for hearing or hearings and/or for deportation in case he is found to be unlawfully within the United States;"

The bond further provided:

"* * * Now, Therefore, the conditions of this obligation are such that (1) in case said alien is released from custody, if the above-bounden obligors, or either of them, shall cause the said alien to be delivered over to an officer of the United States Immigration and Naturalization Service, at San Francisco, California, upon and pursuant to the request of said officer or of any other officer of the United States Immigration and Naturalization Service for a hearing or hearings, and further, notwithstanding any delivery of the said alien for hearing or hearings pursuant to the foregoing conditions, (2) if, in case the said alien, upon such hearing or hearings, is found to be unlawfully within the United States and is for any reason released from custody pending issuance of a warrant of deportation or after said warrant has been issued and pending final deportation, the above-bounden obligors, or either of them, shall cause the said alien to be delivered at San Francis-

George C. Doub, Asst. Atty. Gen., Paul A. Sweeney, Richard M. Markus, John G. Laughlin, Sp. Assts. to Atty. Gen., Charles P. Moriarty, U. S. Atty., Richard F. Broz, Asst. U. S. Atty., Seattle, Wash., for appellant.

Myron L. Borawick, Wayne R. Parker, Midway, Wash., for appellee.

Before HEALY, ORR and FEE, Circuit Judges.

ORR, Circuit Judge.

One Eng Kam arrived in the United States in 1948. He claimed admission as a son of a veteran of the United States armed forces under provisions of the Immigration Act then in force.[1] He was given a hearing before the local Board of Special Inquiry of the Immigration and Naturalization Service and on October 26, 1948, the said Board found that he

1. Act Dec. 28, 1945, 59 Stat. 659.

2. 39 Stat. 890 (1917), 8 U.S.C.A. § 156, now 8 U.S.C.A. §§ 1252–1254.

co, California, into the actual physical custody of an officer of the United States Immigration and Naturalization Service, upon and pursuant to the request of said officer or of any other officer of the United States Immigration and Naturalization Service, for deportation under the aforesaid warrant of deportation, and said alien is accepted by such officer, then this obligation is to be void; otherwise to remain in full force and virtue:"

Thereafter the appeal of Eng Kam to the Commissioner of Immigration and Naturalization was unsuccessful, as was an appeal made by him to the Board of Immigration Appeals from the decision of the Commissioner. The administrative process having been exhausted, the District Director of Immigration and Naturalization on October 19, 1950, made a demand on obligor Sanderson to produce Eng Kam on November 15, 1950, for deportation. This the obligor failed to do. The representatives of the Immigration and Naturalization Service waited until on or about March 5, 1952, before taking any action looking toward the forfeiture of the bond; however on March 25 the bond was declared forfeited. On March 28, 1952, Eng Kam was apprehended by the Immigration Authorities and held for deportation. While so being held he caused to be instituted a habeas corpus proceeding in the United States District Court for the Western District of Washington with the result that said court found the prior proceedings had not been fairly conducted; and ordered that unless a new hearing was granted Eng Kam, it would issue a writ of habeas corpus releasing him. A new hearing was had, and an appeal was carried to the Board of Immigration Appeals, and resulted in that Board reversing the former exclusion decisions and ordering Eng Kam admitted.

Thereafter Sanderson, obligor on the bond, instituted an action in the United States District Court for the Western District of Washington praying for a judgment setting aside the forfeiture of the bond, and that he be reimbursed to the amount of his loss occasioned by the cashing of the U. S. Treasury Bond posted as security and placing of the proceeds in the United States Treasury.

The attack on the action of the Immigration and Naturalization Service in forfeiting the bond is not predicated upon a contention there was no violation of a condition of the bond, but rather upon the claim that the order of the District Court for a new hearing retroactively affected the order of the Local Board of Special Inquiry made on October 26, 1946, and so impregnated it with invalidity that the bond for release given pursuant to the proceedings had by said Board of Special Inquiry was in effect a nullity, and no binding obligation originated thereunder.

■■ We do not agree. The question of liability of the bondsman must be determined by the condition existing at the time of the alleged forfeiture. See United States v. Capua, 7 Cir., 1938, 94 F.2d 292. At the time of making its order refusing Eng Kam admission as a citizen, the Board of Special Inquiry had jurisdiction over the person of Eng Kam and of the subject matter. See Immigration Act of 1917, 8 U.S.C.A. § 153, 39 Stat. 887.[3] It had power and jurisdiction to make the order that it did, and said order remained effective and binding until subsequently set aside. The Board of Special Inquiry had an obligation to make provision insuring Eng Kam's availability for deportation in the event it was finally determined he should be deported, insofar as a bond would effectuate that end. It was to his benefit to be enlarged on bail during the time he was exhausting his administrative appeal.

The order denying admittance was legally in force and effect at the time the bond was given, and the requirement of a bond insuring appearances at future hearings or for deportation being then

3. Now 8 U.S.C.A. § 1226.

within the jurisdiction of the Board of Special Inquiry. See Immigration Act of 1917, 8 U.S.C.A. § 156, 39 Stat. 890.[4] The bond became legally effective; it was breached and the declaration of forfeiture thereof was proper. Accord, Matta v. Tillinghast, 1 Cir., 1929, 33 F. 2d 64; Kavounas v. United States, 1950, 89 F.Supp. 689, 116 Ct.Cl. 406. Cases dealing with forfeitures in criminal cases are analogous and persuasive. Cf.: Detroit Fidelity & Surety Co. v. United States, 8 Cir., 1932, 59 F.2d 565; United States v. Nordenholz, 4 Cir., 1938, 95 F. 2d 756.

Judgment reversed.

HEALY, Circuit Judge (dissenting).

This is not the ordinary case, and the result reached by my brothers in treating it as though it were such serves, not to accomplish justice, but rather to perpetuate an injustice. The government itself admits that the warrant of deportation arose out of an *unfair* hearing. (As stated by the majority, after a fair hearing was had the Board of Immigration Appeals, reversing both the Board of Special Inquiry and itself, held Eng entitled to remain here.) Yet the government now contends, and my brothers hold, that the bond posted to guarantee Eng's surrender "in case he is found to be unlawfuly within the United States" was properly forfeited notwithstanding such a finding was unlawfuly made.

The majority opinion states that "The question of liability of the bondsman must be determined by the condition existing at the time of the alleged forfeiture." What was that condition? The Board of Special Inquiry *after a hearing* had authority to determine whether Eng might be admitted to the United States, 39 Stat. 874, 887. Lack of a fair hearing vitiated its order of deportation, Chin Yow v. United States, 208 U.S. 8., 28 S.Ct. 201, 52 L.Ed. 369, Estep v. United States, 327 U.S. 114, 120–125, 66 S.Ct. 423, 90 L.Ed. 567, so there was no valid finding that Eng was unlawfully

within the United States. Applying the majority's test, therefore, there was at the time of the alleged forfeiture no valid order for Eng's deportation. It would seem unconscionable to require one to surrender to the immigration authorities for deportation if it were clear that there was no legal basis for the requirement.

The majority cite a number of cases—five altogether—none of which is pertinent or germane to the facts here. Unlike this case, none of them involved an order to appear arising out of a proceeding which violated due process and all of them concerned matters taking place after a default, rather than existing at the time of the alleged default.

I would affirm the holding of the trial judge.