UNITED STATES of America,
Plaintiff,

v.

Robert B. CARROLL, Jr., Defendant.

Civ. A. No. 858.

United States District Court
W. D. Arkansas,
Hot Springs Division.

April 9, 1962.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Boyd Tackett, Texarkana, Ark., George E. Steel, Nashville, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The motion of plaintiff for summary judgment on Count IV of the complaint

pursuant to Rule 56, Fed.R.Civ.P., 28 U.S.C.A., is now before the court.

The United States of America, plaintiff herein, filed its complaint containing four separate counts against the defendant, Robert B. Carroll, Jr., on July 17, 1961, in which it alleged violations of the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. §§ 590g–590q, by the defendant. The motion is directed only to Count IV. In that count the plaintiff specifically alleged that the defendant participated as a farmer under the Agricultural Conservation Program for the years 1956, 1957 and 1958, and in such capacity made claims upon and received payment from the plaintiff as follows: $1,399.98 in 1956, $1,331.76 in 1957, and $1,209.74 in 1958, or a total amount of $3,941.48 for the three-year period for soil conservation practices allegedly performed by defendant on a farm operated and controlled by him.

That the State Committee determined that for the years 1956, 1957 and 1958 the defendant knowingly filed claims for payment of federal cost-shares under the program for practices not carried out, or for practices carried out in such a manner that they did not meet the required specifications therefor. Accordingly, claim is asserted against defendant for refund of the $3,941.48.

Plaintiff further alleged that defendant has exhausted his administrative remedies under the regulations for a review of such determinations, or the time authorized for such administrative remedies has been permitted by defendant to lapse.

Defendant filed his answer on August 2, 1961, in which he admitted the allegations in Count IV of the complaint to the extent that he participated as a farmer under the Agricultural Conservation Program for the years in question and that he made claims upon and received payment from plaintiff in the alleged sums.

He denied that he was not entitled to such payments; that the State Committee had basis for any conclusions to the contrary; that he failed to carry out the practices required of farmers participating in the program; and that he failed to meet the required specifications under the terms of the pertinent regulations.

Defendant further alleged, to the contrary, that he did receive proper payments, that he did properly apply the materials, that he was qualified to receive the materials, and that he met all required specifications under the terms of the applicable regulations.

On February 23, 1962, defendant filed his amended answer in which he alleged that plaintiff's action is barred by the statute of limitations, and that said action should be dismissed.

On February 27, 1962, plaintiff filed its request for admissions, but the defendant has not responded to said request, and therefore the request for admissions stands as admitted. Rule 36, Fed.R.Civ.P.

On March 22, 1962, the plaintiff filed its motion for summary judgment based upon the plaintiff's complaint, defendant's answer, plaintiff's request for admissions, and exhibits thereto.

Defendant, in a letter filed April 2, 1962, waived his right to respond to the above motion and to submit a brief in opposition to the motion, but did not concede that the motion should be sustained. Therefore, the court must determine the motion by a consideration of the record and the applicable law.

Title 28 U.S.C.A. § 1345, gives the court jurisdiction of this action.

The questions presented are whether there is any genuine issue as to any material fact, and if not, whether the plaintiff is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P.; Handley v. City of Hope, Ark., (W.D. Ark.1956), 137 F.Supp. 442; Marion County Co-op Ass'n v. Carnation Co., (W.D.Ark.1953), 114 F.Supp. 58, aff'd 8 Cir., 214 F.2d 557.

There is no genuine issue as to any material fact in the present case. The

following undisputed facts appear in the record.

During the years 1956 through 1958 plaintiff, United States of America, conducted a program of soil conservation—the Agricultural Conservation Program—pursuant to which payments and grants of aid were made to farmers carrying out certain prescribed soil conservation practices. The program was conducted by the Department of Agriculture, under the supervision and direction of the Secretary of Agriculture, pursuant to the Soil Conservation and Domestic Allotment Act, as amended, 16 U.S.C.A. §§ 590g–590q, and the regulations promulgated in connection therewith.

The defendant, Robert B. Carroll, Jr., participated as a farmer under the Agricultural Conservation Programs for the years 1956, 1957 and 1958, and in said capacity made claims upon and received payment from the plaintiff as follows: $1,399.98 in 1956, $1,331.76 in 1957, and $1,209.74 in 1958, or a total amount of $3,941.48 for the three-year period for soil conservation practices allegedly performed by defendant on a farm operated and controlled by him.

The State Committee of the Agricultural Conservation Program mailed the following letter dated March 9, 1960, to the defendant:

"You are familiar with an investigation of the activities of the Carroll Building and Appliance Company in handling purchase orders issued in connection with the Agricultural Conservation Program. The investigation was made by the Compliance and Investigation Division.

"Information contained in the report indicates that certain claims for payment of Federal cost-shares were made by you as a farmer for practices reported to have been performed in connection with the 1956, 1957, and 1958 Agricultural Conservation Programs. The claims for payment contain representations as to the manner and extent in which the practices were performed. The ACP State Handbook requires for each of these years that sales invoices be filed with the Agricultural Stabilization and Conservation County Committee in connection with the claim for payment where materials other than those acquired on purchase order are used.

"To complete your report of performance and claim for payment you filed with the ASC County Committee invoices by Carroll Building and Appliance Company. For each of the years involved, the investigation report contains information indicating that one or more of the invoices reflected a greater delivery of certain specified quantities and quality of material than could have been delivered. Use of the quantity and quality of material indicated to be available would not have resulted in performance of one or more practices as represented in the claims for payment.

"The information presently available indicates that a finding that a false claim was knowingly filed may be proper. * * *

" * * * If there is a finding of a knowingly filed false claim, all cost-shares paid (including the Government's cost of materials advanced on purchase order) for the program years involved must be recovered. The records show that you were paid cost-shares totaling $3,941.48 under the 1956, 1957, and 1958 programs.

"The State Committee expects to consider the case further on March 16 at 4:00 p. m. The Committee will be in session in Room 387 in the Federal Building here in Little Rock. A farmer has the right to appear before the State Committee in person or by counsel and present evidence in his behalf if he wishes to do so. If you wish to appear before the State Committee, you should do so on the date and at the time set out above."

The above hearing, of which the defendant was notified by the above letter, was postponed from time to time due to illness in the family of the defendant, but eventually was held on April 21 and 22, 1960, at which time the defendant was notified that according to the information available at the time it would have been impossible for him to comply with the practices claimed, but the Committee gave him additional time in which to produce additional records. No additional information was furnished, and on May 5 and 6, 1960, the case was again reviewed, resulting in a finding that false claims had been filed.

The State Committee of the Agricultural Conservation Program mailed the following letter, dated May 23, 1960, to the defendant:

"* * * The State Committee has considered the statements which you made; however, no documents or other data or information has been furnished to clear up discrepancies existing between the quantity of several kinds of material acquired by your firm and that for which delivery was certified by you on purchase orders and as cash sales including those reported to have been made to you as a farmer. Discrepancies also existed between the quantity of seed which you reported sold from specified lots of seed and the quantity of seed from the lots which your suppliers show to have been sold to Carroll Building and Appliance Company. Seed for which payment is claimed under the ACP must meet the specifications set out in the program. Documentary evidence is required to show that the specifications were met.

* * * * * *

"The State Committee carefully considered all information which has been made available to it. * * * The quantity of the specific lots of seed which your suppliers' records show that were sold to your firm was less than the quantity of the seed from the lots which your firm

reported to have delivered. If the acreages reported were actually seeded at the rate reported using uncleaned or untested seed, it appears that erroneous information with respect to quality of the seed was furnished to support the claim for payment. The State Committee has, therefore, administratively found that false claims were knowingly filed as listed hereinafter. This finding by the State Committee is an administrative action in accordance with ACP regulations and the procedure for handling ACP irregularities. Cases of this nature must be sent to the Regional Attorney, Office of the General Counsel, for review and for further action, if any, which may be appropriate.

* * * * * *

"The finding referred to herein requires the refunding of all cost-shares paid to you for each of the years for which one or more false claims were found to have been knowingly filed. * * *

* * * * * *

"A copy of the 1958 ACP State Handbook is enclosed for your information. Section 7–E contains similar language regarding false claims to that quoted herein from the ACP National Bulletin. Section 6–H also sets forth the right of appeal."

Subsequent to the determination by the State Committee of the Agricultural Conservation Program, the defendant did not seek a rehearing before said State Committee nor has he sought review of the decision of the State Committee before the Administrator, Agricultural Conservation Program Service as provided for in the regulations. Time for rehearing before the State Committee and the time for requesting a review by the Administrator, Agricultural Conservation Program Service, have expired. The defendant has not made refund of any part of the $3,941.48 demanded of him.

In view of these undisputed facts, the primary question before the court is

whether the defendant is bound by the administrative findings above and is thus liable to the plaintiff for the amount of claims found to be false.

The payments received by the defendant during the years in question were made under the authority of 16 U.S.C.A. § 590h(b) (1961 Supp.), which provides in part:

"  *   *   *   the Secretary shall have power to carry out the purposes specified in clauses (1), (2), (3), (4), and (5) of section 590g(a) of this title by making payments or grants of other aid to agricultural producers, including tenants and sharecroppers, in amounts determined by the Secretary to be fair and reasonable in connection with the effectuation of such purposes during the year with respect to which such payments or grants are made, and measured by (1) their treatment or use of their land, or a part thereof, for soil restoration, soil conservation, or the prevention of erosion; (2) changes in the use of their land; (3) their equitable share, as determined by the Secretary, of the normal national production of any commodity or commodities required for domestic consumption; or (4) their equitable share, as determined by the Secretary, of the national production of any commodity or commodities required for domestic consumption and exports adjusted to reflect the extent to which their utilization of cropland on the farm conforms to farming practices which the Secretary determines will best effectuate the purposes specified in section 590g(a) of this title; or (5) any combination of the above.  *   *   *   The Secretary shall make such regulations as are necessary relating to the selection and exercise of the functions of the respective committees, and to the administration, through such committees, of such programs.  *   *   * Rules and regulations governing payments or grants under this sub-section shall be as simple and direct as possible, and, wherever practicable, they shall be classified on two bases: (a) Soil-depleting crops and practices, (b) soil-building crops and practices."

The applicable regulations duly promulgated pursuant to said act appear in 20 Fed.Reg. 4281 (1955) for the program year 1956; 21 Fed.Reg. 5034 (1956) for the program year 1957, and 22 Fed.Reg. 6482 (1957) for the program year 1958.

The provision covering the filing of false claims for the program year 1956 appears in 20 Fed.Reg., Sec. 1101.739, which states as follows:

"If the State committee finds that any person has knowingly filed claim for payment of the Federal cost-share under the program for practices not carried out, or for practices carried out in such a manner that they do not meet the required specifications therefor, such person shall not be eligible for any Federal cost-sharing under the 1956 program and shall refund all amounts that may have been paid to him under the 1956 program. The withholding or refunding of Federal cost-shares will be in addition to and not in substitution of any other penalty or liability which might otherwise be imposed."

Identical language is used in the regulations for each of the subsequent years.

The regulations concerning appeals are set forth in Par. 34 of the regulations (Sec. 1101.734 for 1956, Sec. 1101.-834 for 1957, and Sec. 1101.934 for 1958). The appeals sections for the three years involved are identical and are as follows:

"Appeals.  (a) Any person may, within 15 days after notice thereof is forwarded to or made available to him, request the county committee or State committee in writing to reconsider its recommendation or determination in any matter affecting the right to or the amount of his

Federal cost-shares with respect to the farm or ranch. The county committee or State committee shall notify him of its decision in writing within 15 days after receipt of written request for reconsideration. If the person is dissatisfied with the decision of the county committee, he may, within 15 days after the decision is forwarded to or made available to him, appeal in writing to the State committee. The State committee shall notify him of its decision in writing within 30 days after the submission of the appeal. If he is dissatisfied with the decision of the State committee, he may, within 15 days after its decision is forwarded to or made available to him, request the Administrator, ACPS, to review the decision of the State committee. The decision of the Administrator, ACPS, shall be final. Written notice of any decision rendered under this section by the county or State committee shall also be issued to each other landlord, tenant, or sharecropper on the farm or ranch who may be adversely affected by the decision."

The effect of such review is stated in 16 U.S.C.A. § 590n, as follows:

"The facts constituting the bases for any payment or grant or the amount thereof authorized to be made under section 590g or 590h of this title, when officially determined in conformity with rules or regulations prescribed by the Secretary of Agriculture, shall be reviewable only by the Secretary of Agriculture."

■■ From the foregoing it is evident that the defendant has failed to exhaust his administrative remedies. The regulations provide for a review of the State Committee's action which was not taken in the present case. When agency action is subject to appeal to higher administrative authority, the administrative remedy obviously has not been exhausted until the higher authority has acted. In United States v. Sing Tuck, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917 (1904), the Supreme Court denied an alien relief from an exclusion order issued by immigration officers on the ground that the petitioner had not appealed to the Secretary of Commerce and Labor. This principle has been followed ever since. 3 Davis, Administrative Law Treatise, Sec. 20.08, p. 104 (1958). It is elemental that the defendant is bound by an administrative decision from which he failed to appeal. United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946); Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944).

■■ Under another statute, the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1281 et seq., an analogous provision makes the quota provisions final and conclusive if an administrative appeal is not taken. 7 U.S.C.A. § 1363. Failure to pursue administrative remedies precludes the raising of defenses on the merits in an action by the Government to collect the penalties. Corpstein v. United States, 262 F.2d 200 (10 Cir. 1958); United States v. MacMullen, 262 F.2d 499 (2 Cir., 1958); Donaldson v. United States, 258 F.2d 591 (6 Cir., 1958); and Miller v. United States, 242 F.2d 392 (6 Cir., 1957). These same principles clearly apply to this claim.

The only reported case where defendant has failed to exhaust his remedies under this particular statute, United States v. Kelly, 69 F.Supp. 89 (D.C.Ia. 1946), is in accord. The court, beginning at page 94, stated:

"In the present case, the defendant claims under the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. §§ 590a to 590q. It is obvious that with several million farmers participating in the farm programs under that Act that disputes could and do arise between different county committees and farmers as to their payments. Such disputes could arise as to acreage, yield, soil conservation practices or deductions. It would hardly seem that Congress intended that federal district courts should be charged with settling and

determining all such disputes, in the first instance at least. It would seem that Congress intended that questions in regard to such payments should be subject to administrative supervision and review. In 16 U.S.C.A. § 590n relating to Triple A payments for the years 1936 to 1939, it is provided: 'The facts constituting the bases for any payment or grant or the amount thereof authorized to be made under section 590g or 590h of this title, when officially determined in conformity with rules or regulations prescribed by the Secretary of Agriculture, shall be reviewable only by the Secretary of Agriculture.'

"In 7 U.S.C.A., § 1385 relating to Triple A payments for 1940 and subsequent years it is provided in part as follows: 'The facts constituting the basis for any payment under sections 590a–590q of Title 16, parity payment, or loan, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary [of Agriculture] or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government.' Under 16 U.S.C.A., § 590h(b) the Secretary of Agriculture was given authority to make the necessary regulations to carry out the administration of programs under the Soil Conservation and Domestic Allotment Act.

\* \* \* \* \* \*

" \* \* \* The defendant made no use of the administrative remedies provided for in cases of disputes with county committees under which he could have had the action of the Black Hawk County Committee in attempting to deduct the claimed shortages on his corn loans reviewed by the State Committee and the Regional Director.

\* \* \* \* \*

"It is the holding of the Court that the defendant having failed to comply with the administrative provisions in regard to the filing of his claim and having failed to exhaust the administrative appeal provisions provided for the review of actions of county committees is barred from maintaining this action against the United States."

The procedure required by the regulations has been changed to a minor extent since the Kelly case, but the statutes remain the same, and so should the court's interpretation of the act.

■■■■ Defendant contends that the statute of limitations is a defense to the plaintiff's claim. The only possible statute concerning this case is 31 U.S.C.A. § 235, in which limitation for filing suits under the False Claims Act, 31 U.S.C.A. § 231 et seq., for penalties and double damages is fixed at six years. Plaintiff's action was brought within that time. The State statutes of limitations do not apply, nor will laches apply against the United States. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), and cases cited therein.

It is regrettable if the defendant has suffered a hardship because of his failure to comply with the applicable statutes, the rules and regulations of the Department of Agriculture. However, as the Supreme Court said in Federal Crop Ins. Corp. v. Merrill, (1947), 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, "The oft-quoted observation in Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, 143, [41 S.Ct. 55–56, 65 L.Ed. 188], that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury."

From the above discussion it follows that there is no dispute as to the material facts and that plaintiff is entitled

to a judgment as a matter of law. Therefore, plaintiff's motion for summary judgment should be granted, and judgment entered in favor of the plaintiff for the amount sued for in Count IV of the complaint, $3,941.58, with interest at 6 percent from this date.