**UNITED STATES of America**

**v.**

**GLENS FALLS INSURANCE COMPANY**

**v.**

**Luke LEA, Sara Lea, Alonzo Cox, Alice Cox, Robert D. Cox, Lynn Cox, Charles R. Cox, Wilma Cox, and Pioneer Fuel Company, Inc.**

**Civ. A. No. 5975.**

United States District Court
E. D. Tennessee, N. D.

Nov. 3, 1967.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for plaintiff.

E. Bruce Foster, Jr., Frantz, McConnell & Seymour, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

On March 1, 1963, the Tennessee Valley Authority (the TVA) entered into a contract (No. 63P–42–T6) with Cox Coal Company (Cox) of Jellico, Tennessee, for the purchase of certain weekly coal tonnages. Deliveries were to begin on April 15, 1963. It was specified in Paragraph 10 of the contract, "The Attached Terms and Conditions of Bid constitute parts of this contract." Paragraph 9 of the Terms and Conditions was as follows:

"9. *Walsh-Healey Act.* These Terms and Conditions include the representations and stipulations pursuant to the Walsh-Healey Act that are attached in Form 1847A; provided, however, that if the Contractor is not the producer of the coal sold hereunder, paragraph A of such stipulations shall not be applicable but the Contractor shall notify the producer that TVA is the purchaser of the coal and the provisions of the Walsh-Healey Act are applicable to the production of the coal; and provided further that, apart from the liability of the producer, the Contractor shall be liable for observance in the mines of all the labor standards provided in Section 1 of said Act."

Form 1874A entitled Walsh-Healey Act provided in part as follows:

"The following representations and stipulations pursuant to Public Act

846, 74th Congress, are made a part of this contract:

\* \* \* \* \* \*

"(B) All persons employed by the Contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract will be paid, without subsequent deduction or rebate on any account, not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work or in the particular or similar industries, or groups of industries currently operating in the locality in which the materials, supplies, articles, or equipment are to be manufactured or furnished under the contract; PROVIDED, HOWEVER, That this stipulation with respect to minimum wages shall apply only to purchases or contracts relating to such industries as have been the subject matter of a determination by the Secretary of Labor."

On or about March 1, 1963, Cox, as principal, and defendant, Glens Falls Insurance Company (Glens Falls), as surety, entered into a Coal Contract Performance Bond which was delivered to TVA binding themselves in the penal sum of $313,200.00, and conditioned:

"NOW, THEREFORE, if the principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of said contract, and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue.

"It is a condition of this bond that it shall cover the principal's obligations under the aforesaid contract for the period of one year beginning with the date established under the contract for the beginning of deliveries of coal;

provided, however, that upon execution of semiannual renewal certificates by the surety, the bond shall be continued in effect thereafter for additional 6-month periods until expiration of the contract; and provided, further, that notwithstanding such renewal, the surety shall not be bound hereunder in an amount in excess of the penal sum hereinabove stipulated."

Glens Falls executed a Bond Extension extending the performance bond through October 14, 1964.

The last performance by Cox's employees was on September 19, 1964. On December 17, 1964, W. T. Wallace, Contract Agent for TVA, wrote Cox with respect to Contract 63P–42–T6:

"We are proceeding to *disburse funds due under this contract for coal delivered* prior to October 15, 1964, which affects *settlement of account between the parties of this contract* through this date." (Emphasis added.)

On December 29, 1964 J. M. Wagner, Contract Agent for TVA, wrote J. B. Tidman of Glens Falls with respect to Contract 63P–42–T6:

"In answer to your letter dated December 22, 1964, addressed to E. C. Hill, I am pleased to inform you that *the contract obligations between TVA and the Cox Coal Company through October 14, 1964 have been satisfactorily settled. No claim will be filed by TVA against the Surety for the contractor's delinquent deliveries in such period.*" (Emphasis added.)

But in the meantime the Department of Labor raised the question whether Cox in its performances on the contract failed to pay certain employees the minimum wages and overtime compensation required by the Walsh-Healey Act. A hearing was held by the Division of Public Contracts of the Department of Labor and the Decision of E. West Parkinson, the Hearing Examiner, was filed on August 5, 1965. The upshot was a finding that thirteen named employees "while engaged in the performance of Contract Number 63P–42–T6 during the period

from July 1, 1963 to November 5, 1964 were underpaid in the total amount of $6,500.00, said sum representing the total difference in the amount required by the Act to be paid to said employees for said work and the amount actually paid them by respondents." And the three respondents comprising the company (Cox) were ordered to pay the United States of America the sum of $6,500.00.

They did not pay and suit was brought against them in this Court by the United States of America. They failed to appear and a default judgment was entered against them by this Court on January 21, 1966 in the amount of $6,500.00.

The judgment remaining unpaid, the United States of America filed suit against Glens Falls in this Court on May 5, 1967 on the performance bond and asked judgment against said Glens Falls in the amount of $6,500.00, plus interest from August 5, 1965 and its costs. In its answer, Glens Falls denied liability and at the pretrial made the following contentions:

"The liquidated damage provisions of the Walsh-Healey Public Contracts Act do not give rise to a cause of action in favor of the plaintiff against the defendant, as surety, on the coal contract performance bond which was executed by Cox Coal Company in favor of Tennessee Valley Authority (TVA) as obligee.

"TVA made final settlement with Cox Coal Company under the contract and released defendant from liability on the performance bond.

"Plaintiff's cause of action is barred by the statute of limitations as provided by 29 U.S.C. Section 255, subsection (a) in that the cause of action accrued more than two years prior to the date of the commencement of this action."

The facts, as found in the various exhibits, in the affidavit of Edward T. Gregory and in the stipulation of the parties, are undisputed. Each side has filed a motion for a summary judgment.

In our consideration of the defenses raised by Glens Falls, it should be recalled at the outset that the suit here is brought not under the Walsh-Healey Act (although the provisions of that Act must be relied on to fix the amount of its liability, if any) but under the provisions of the surety (performance) bond entered into by defendant pursuant to the contract provisions of its principal (Cox) with TVA. The obligation of that bond by its terms ran to TVA, but it was conditioned upon the fulfillment of by the principal "all the undertakings" of its contract with TVA. One of its undertakings was to comply with the minimum wage provisions of the Walsh-Healey Act. This the principal did not do and all this is undisputed.

Glens Falls seeks to insulate itself from liability on the theory that by the terms of the bond it was obligated to TVA and not to the United States of America which is the plaintiff here.

In dealing with this argument, the Court emphasizes that it was a condition of Glens Falls' bond that it should cover the principal's obligations under the aforesaid contract. The principal's obligation under the Walsh-Healey Act was enforceable under 41 U.S.C. Sec. 36 either by withholding from any amounts due under the contract "or [by a suit] brought in the name of the United States of America by the Attorney General." Pertinent portions of Sec. 36 are as follows:

"Any breach or violation of any of the representations and stipulations in any contract for the purposes set forth in section 35 of this title shall render the party responsible therefor liable to the United States of America for liquidated damages, in addition to damages for any other breach of such contract, the sum of $10 per day for each male person under sixteen years of age * * * Any sums of money due to the United States of America by reason of any violation of any of the representations and stipulations of said contract set forth in section 35 of this title *may be withheld from any*

*amounts due on any such contracts or may be recovered in suits brought in the name of the United States of America by the Attorney General thereof.* All sums withheld or recovered as deductions, rebates, refunds, or underpayments of wages shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employees who have been paid less than minimum rates of pay as set forth in such contracts and on whose account such sums were withheld or recovered * * *" (Emphasis added.)

These provisions destroy Glens Falls' contention that the only obligation under the bond was to TVA. The contract obligations were based in part on the provisions for the delivery of coal and in part on the provisions requiring compliance with the Walsh-Healey Act. The contractor therefore incurred both contractual and statutory obligations. That Glens Falls was by the terms of its bond bound to TVA did not relieve it of its surety obligation to the Department of Labor under the Walsh-Healey Act. The bond was conditioned that the principal would truly perform and fulfill "all the undertakings" of the contract, one of which was the observance of the minimum wage provisions.

Section 35 of Title 41 U.S.C., which was the basic provision for which Section 36 was the enforcing provision states that the minimum wage provisions shall be included:

"In any contract made and entered into by any executive department, independent establishment, or other agency or instrumentality of the United States, * * *"

■■ Obviously, the obligations under Contract 63P–42–T6 entered into by TVA with Cox, whether TVA was an independent establishment or other agency or instrumentality of the United States, did not cease with the provisions for the delivery of coal but included payment of the minimum wages as determined by the Department of Labor. Whatever the uniqueness of TVA's powers and respon-

sibilities under the TVA Act, it was not empowered to stand between the contractors and sureties on the one side and other arms of the United States Government on the other. The TVA was empowered to sue in its own name or to withhold payment upon matters of particular concern to it, but just as clearly the Attorney General representing other branches of the Government was empowered to bring suit in the name of the United States of America on matters of concern to them.

■ What we have said with respect to the first defense indicates the fallacy in the second. An examination of the language of the two letters by TVA Contract Agents quoted above reveals that they dealt only with the matter of primary concern to TVA, namely the coal accounts. There was no "account" with the TVA and Cox on amounts unpaid under the minimum wage provision. Obviously, the "accounts" referred to in Mr. Wallace's letter related to the delivery of coal and that was all that was settled. The later letter from Contract Agent Wagner to Glens Falls obviously referred only to deliveries under the coal Contract. They were the matters of concern to TVA and there was no reference to concerns of the Department of Labor for observance of minimum wage payments.

This brings us to the third defense that plaintiff's action is barred by the two-year statute of limitations provided by 29 U.S.C. Sec. 255(a). This section reads in part:

"Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act—

"(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless

commenced within two years after the cause of action accrued; * * * "

■ Our difficulty is that this statute does not apply to Glens Falls. It is a paid surety. It is the general rule that delay in proceeding against a principal or even failure to pursue the principal will not discharge the surety. 50 Am.Jur.—Suretyship, Secs. 44, 65 and 79; Tidewater Coal Exchange v. New Amsterdam Cas. Co., 20 F.2d 951, 955 (D.C.Del.); Nelson v. First National Bank, 69 F. 798 (C.A.8); American Bonding Co. v. Pueblo Ins. Co., 150 F. 17, 9 L.R.A.,N.S., 557; 72 C.J.S. Principal and Surety § 208 et seq. Moreover, the contract of a surety for hire is construed most strongly against the surety and in favor of the indemnity. 50 Am.Jur.—Suretyship, Secs. 42 and 318. See discussion in Chapman v. Hoage, 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370; Day v. Walton, 199 Tenn. 10, 281 S.W.2d 685, 691. Mere passiveness on the part of the creditor, even when continued until the statute has run in favor of principal does not operate to discharge surety from liability. Scott v. Gaulding, 187 Ga. 751, 2 L.Ed.2d 69, 122 A.L.R. 200, 202, 205; Nashville Bk. v. Campbell, 15 Tenn. (7 Yerger) 353. The obligation of Glens Falls is not governed by the statute of limitations with reference to bringing suit against the contractor. Defendant's obligation roots in its contract of suretyship which is not governed by the statute of limitations applying to actions under the Walsh-Healey Act.

An order will be entered adjudging the defendant, Glens Falls, liable to the United States Government in the amount of $6,500.00, plus interest from August 5, 1965 and costs.

* * *

■ One final matter, after suit was filed against defendant Glens Falls, it, on July 6, 1967, filed a third-party complaint against Luke and Sara Lea, six members of the Cox family, and Pioneer Fuel Company, Inc., as third-party defendants. The third party complaint alleged that Glens Falls was surety on the performance bond forming the basis of the cause of action filed by plaintiff against defendant; that this bond was executed upon application of third-party defendants, Alonzo Cox, Charles R. Cox and Robert D. Cox d/b/a Alonzo Cox & Sons and Cox Coal Company and by third-party defendant, Pioneer Fuel Company, Inc., and that said parties executed contracts of indemnity in favor of defendant and third-party plaintiff, a copy of the application being exhibited as an exhibit to the complaint, together with a copy of the contract of indemnity executed by third-party defendants, Alonzo Cox, Alice Cox and Pioneer Fuel Company, and a copy of the contract of indemnity executed by third-party defendants, Robert D. Cox, Lynn Cox, Charles R. Cox and Wilma Cox. It further alleged that third-party defendants, Luke Lea and Sara Lea, executed a contract of indemnity in favor of defendant and third-party plaintiff, a copy of which is attached to third-party complaint as an exhibit.

Defendant and third-party plaintiff alleged that if it be held liable to the plaintiff United States of America, then it is entitled to recover from third-party defendants all of what plaintiff United States of America may recover from defendant Glens Falls, together with all loss, costs, expenses and attorneys' fees.

Glens Falls, therefore, demanded judgment against third-party defendants for all sums of money that may be adjudged against Glens Falls in favor of the United States of America together with all its loss, costs, expenses and attorneys' fees.

All third-party defendants, as the record shows, were served with process. No one of them, including one who had repeated communications with the Court that he would be present, ever appeared at any of the preliminary hearings or at the hearing on the merits. An earlier motion of Luke and Sara Lea to intervene was tentatively granted for the purpose of permitting proof on the question whether the Leas had indemnified Glens Falls or had terminated their responsibility on their bond. As indicated,

the Leas did not appear for this or any other purpose.

It appears, therefore, to the Court that defendant and third-party complainant is entitled to a judgment against the third-party defendants in the amount of the judgment entered today against defendant in favor of the United States of America, together with interest and costs. Upon compliance by the defendant and third-party complainant with the provisions of Rule 55 with reference to default judgments, the Court will enter judgment as indicated against the third-party defendants.