The STUYVESANT INSURANCE COMPANY et al., Plaintiffs,

v.

DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, UNITED STATES DEPARTMENT OF JUSTICE, Defendant.

No. 75 C 1043.

United States District Court, N. D. Illinois, E. D.

Dec. 2, 1975.

**1202**

Samuel D. Myers, Freedman, Freedman & Myers, Ltd., Chicago, Ill., for plaintiffs.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION AND ORDER

JULIUS J. HOFFMAN, Senior United States District Judge.

■ The defendant District Director of the Immigration and Naturalization Service moves to dismiss this action by a plaintiff surety company and two of its agents for a declaratory judgment that four immigration bonds have not been breached. The grounds for the motion, which presents questions of first impression, are that the court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. Under Rule 12(b) of the Federal Rules of Civil Procedure, the court will consider the motion as one for summary judgment under Rule 56, defendant having filed a record of administrative proceedings and plaintiffs having raised matters in their memorandum which do not appear in the complaint. *See National Family Insurance Company v. Exchange National Bank of Chicago,* 474 F.2d 237 (7th Cir. 1973); *Sager Glove Corporation v. Aetna Insurance Company,* 317 F.2d 439 (7th Cir. 1963).

In the four-count complaint, the Stuyvesant Insurance Company alleges its capacity as surety on the immigration bonds of Glenn G. Moore, Miguel Gonzalez-Lopez, Jose Figueroa-Arroyo, and Bachir Zabadneh. Immigration bonds are given as consideration for permission, granted by the District Director to aliens, to enter and reside temporarily in the United States. A so-called delivery or appearance bond guarantees the appearance of an alien for deportation and at hearings in exclusion proceedings. Conceptually, the delivery bond does not differ from the familiar bail bond. Departure bonds insure that an alien admitted temporarily will maintain a particular status (for example, he will remain unemployed) and depart within the designated period. The surety executes such bonds in return for a premium paid by the alien. Immediately upon a default of the conditions of the bond, the obligation to pay the principal accrues. The obligation is cancelled if the alien complies with the conditions.

Plaintiffs allege that defendant declared breaches of the respective bonds without according minimum standards of procedural due process. Specifically, they assert that defendant arbitrarily declared the breaches without prior notice and an evidentiary hearing. Plaintiffs also aver that defendant is "estopped" from enforcing the bonds because of his delay in notifying plaintiff of the breach declarations after they had been made. Finally, plaintiffs allege that the vague terms of the bonds preclude their enforcement. The prayer is for a declaratory judgment that the bonds have not been breached.

## I.

### Subject Matter Jurisdiction

The first question presented is whether plaintiffs have properly invoked the subject matter jurisdiction of the court.

■ At the outset, the court observes that the Tucker Act, 28 U.S.C. § 1362(a), cannot confer subject matter jurisdiction

of this action for declaratory relief. Under the Act, which under specified conditions waives the sovereign immunity of the United States, the district court may consider claims for money damages only, and even then, claims for less than $10,000. Claims for more than that amount are determined by the Court of Claims. *DiBattista v. Swing*, 135 F.Supp. 938 (D.C.Md.1955). *See also International Engineering Co. v. Richardson*, 167 U.S. App.D.C. 396, 512 F.2d 573 (1975).

■ In the complaint, plaintiffs predicate subject matter jurisdiction on the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Defendant correctly points out that the Declaratory Judgment Act is not an affirmative grant of federal jurisdiction. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). And it is true, as defendant suggests, that the Circuit Courts of Appeals are divided on the question of whether the Administrative Procedure Act is an affirmative jurisdictional grant. Recently, however, the Court of Appeals for the Seventh Circuit aligned itself with those courts holding that the Administrative Procedure Act does independently confer jurisdiction. *Sanders v. Weinberger*, 522 F.2d 1167 (7th Cir. 1975).

Moreover, in *DiBattista v. Swing*, 135 F.Supp. 938 (D.C.Md.1955), the court suggested that the only appropriate vehicle for declaratory relief from a declaration of a breach of an immigration bond is an action under § 10 of the Administrative Procedure Act against the officer whose action is to be reviewed. *DiBattista* was an alien's action under the Tucker Act against the Attorney General and Commissioner of Immigration and Naturalization Service for declaratory relief from breach declarations. The court dismissed the case for lack of subject matter jurisdiction principally because of the absence of a claim for money.

Defendant contends that two exceptions to the availability of judicial review under the Administrative Procedure Act apply to the case at bar. It is asserted first that the decision to declare a breach of an immigration bond is committed by statute to the discretion of the District Director. Second, defendant claims that plaintiffs have failed to exhaust administrative remedies with respect to Counts II and IV.

■ Generally, judicial review is available under the Administrative Procedure Act to persons aggrieved by agency action ". . . except to the extent that —(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Defendant cites 8 U.S.C. § 1103, defining the responsibilities of the Attorney General and the Commissioner of Immigration and Naturalization with respect to immigration and naturalization matters; 8 U.S.C. § 1184(a), empowering the Attorney General to promulgate regulations concerning the admission of non-immigrants; and 8 U.S.C. § 1252(a), authorizing judicial review of ". . . any determination of the Attorney General concerning· detention, release on bond, or parole pending final decision of deportability . . . ." None of these sections expressly precludes judicial review of breach declarations or commits them solely to agency discretion. Moreover, the *DiBattista* court assumed that administrative declarations of breach were judicially reviewable when it observed that the appropriate vehicle for review is an action under the Administrative Procedure Act against the officer whose action is sought to be reviewed. Furthermore, the possibility that the District Director may be required to institute court proceedings to enforce a bond obligation likewise assumes judicial review. The Administrative Procedure Act provides in part that "[e]xcept to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for

judicial enforcement." 5 U.S.C. § 703. The court holds, therefore, that judicial review is not precluded by the statutes cited by defendant.

While it is familiar doctrine that a party must exhaust administrative remedies before a court will accept jurisdiction, the application of the rule has produced conflicting decisions, some of which have overlooked the applicable section of the Administrative Procedure Act. The task of the court in the case at bar is to determine whether the rule applies to the failure of plaintiffs to take administrative appeals from the declarations of breach on the delivery bond of Miguel Gonzalez-Lopez (Count II) and the maintenance of status and departure bond of Bachir Zabadneh (Count IV).

The applicable statute, 5 U.S.C. § 704, provides in pertinent part that an administrative appeal is not a prerequisite to judicial review, unless the agency otherwise "requires" by rule and provides that the action "meanwhile shall be inoperative." See K. Davis, Administrative Law Treatise, § 20.08. It has, according to Professor Davis, been almost "completely ignored" in judicial opinions. *Id.* See, e. g. *Rigby v. Rasmussen*, 275 F.2d 861 (10th Cir. 1960); *United States v. Carroll*, 203 F.Supp. 423 (W.D.Ark.1962). While the regulations of the Immigration and Naturalization Service (INS) allow for administrative appeals, they do not "require" such appeals to be taken. See 8 CFR § 3.1(b)(7), providing that appeals "shall lie" from "determinations relating to a bond," to the Board of Immigration Appeals. The form (I–323) for communicating notice of breach provides, *inter alia*, that the District Director's decision is "final," if no appeal is filed within 15 days of the date of the notice. There is, furthermore, no provision in the regulations providing that the action "meanwhile shall be inoperative." It would appear from this analysis of the statute, without more, that plaintiffs' failure to take administrative appeals in the cases of Lopez and Zabadneh is not fatal to the subject matter jurisdiction of this court.

Some of the relevant case law, however, suggests a less liberal view of the doctrine of exhaustion than is suggested by a reading of 5 U.S.C. § 704. See *Rigby v. Rasmussen, supra*; *United States v. Carroll, supra*. Prior to the enactment of the Administrative Procedure Act, the Supreme Court denied an alien relief from an exclusion order on the ground of failure to prosecute an administrative appeal. *United States v. Sing Tuck*, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917 (1904).

The Court of Appeals for the Seventh Circuit takes a comparatively flexible approach. The court has indicated that administrative remedies may be bypassed if, *inter alia*, the question presented is strictly legal, not involving agency expertise or factual determinations. *Borden, Inc. v. FTC*, 495 F.2d 785 (7th Cir. 1970), *citing Jewel Companies, Inc. v. FTC*, 432 F.2d 1155 (7th Cir. 1970). One of the holdings in *Jewel* was that failure to seek an administrative appeal did not preclude jurisdiction in the district court to decide whether a Federal Trade Commissioner had misconstrued his statutory authority in voting for the issuance of an FTC complaint. The court characterized this question as "inherently legal." 432 F.2d at 1159. In view of *Borden* and *Jewel*, the immediate inquiry for this court is the nature of the claims relating to the Lopez and Zabadneh bonds. More precisely, the question is whether these claims are inherently legal, not involving agency expertise or any factual determinations.

In Count II, plaintiffs allege that the District Director abused his discretion in declaring a breach of the Lopez delivery bond for the reason that plaintiffs substantially complied with its terms. Plaintiffs take the position that the delivery of Lopez into the custody of immigration officials on January 27, 1975, seven and one-half months after June 10, 1974, the date upon which Lopez was scheduled to be delivered, constitutes "substantial compliance." Since these dates are undisputed, there appear to be no questions strictly factual in character remaining for agency determination.

It nevertheless seems to this court that the question of substantial compliance with the terms of an immigration bond should, in most instances, receive the benefit of agency review before adjudication by a court. The regulations declare that an immigration bond is breached when there is a "substantial violation" of its terms. 8 CFR § 103.-6(c)(3). It is true that courts have dealt comfortably with "substantial violation," and "substantial compliance," thus indicating the legal nature of the concepts. *See, e. g. Ahmed v. United States*, 480 F.2d 531 (2nd Cir. 1973); *United States v. Western Surety Company*, 118 F.2d 703 (9th Cir. 1942). The mere articulation of the terms, however, implies flexibility, and the equitable application in the first instance of the concepts embodied therein may require knowledge, immediately possessed by the agency, of an established custom or usage relating to the particular bond presented. It appears, moreover, that agency appeals have in the past been the practice in bond cases. In both *Ahmed, supra,* and *Western Surety Company, supra,* plaintiffs took administrative appeals before seeking judicial relief. See also, *In the Matter of L,* 3 IN 862 (Central Office 1950); *Matter of Stuyvesant Insurance Company,* 13 IN 555 (Regional Commissioner 1970). This court therefore concludes that the question of substantial compliance with the terms of the Lopez delivery bond, while legal in character, may involve agency expertise, and should, therefore, be subjected to administrative review. Plaintiffs having failed to appeal the Lopez declaration, this court is without jurisdiction to consider it. In passing, the court expresses some misgivings about the merits of the Lopez claim, since the general rule appears to be that subsequent compliance with the terms of an immigration bond does not vitiate the breach. The bonds themselves provide that subsequent adjustment of status does not impair or diminish the principal obligation. For the present, however, review by an agency tribunal conversant in the subject matter is preferable to summary judgment for defendant.

Because it presents issues of law not involving any agency expertise, the Zabadneh claim (Count IV) differs materially from the Lopez claim (Count II). The principal allegations of the Zabadneh claim are that defendant's failure to hold an evidentiary hearing prior to the declaration of breach and failure to notify plaintiffs that Zabadneh had been requested to depart the United States constitute a denial of due process. Plaintiffs also allege that defendant is estopped to enforce the bond because of a delay, in declaring the breach, of nearly a year after requesting that Zabadneh depart. In the provision delineating the scope of judicial review, the Administrative Procedure Act recognizes that these issues are appropriate for resolution by the courts. In pertinent part, 5 U.S.C. § 706(2) provides that the reviewing court shall hold unlawful agency action contrary to constitutional right, without observance of procedure required by law, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A), (B), (D). Moreover, similar positions were considered, and rejected, in the agency appeals of Glenn Moore (Count I) and Jose Figueroa-Arroyo (Count III). As a practical matter, there is no need, by application of the doctrine of exhaustion, to subject the Zabadneh claim to a futile administrative appeal. *United Black Fund, Inc. v. Hampton,* 352 F.Supp. 898 (D.C.D.C.1972). The court therefore concludes that subject matter jurisdiction is properly invoked with respect to Count IV.

## II.
### Claims for Relief
#### A.
#### Procedural Due Process

By statute and under the regulations, the District Director is authorized to declare breaches of immigration bonds. 8 U.S.C. §§ 1103, 1184(a), 1252(a); 8 CFR §§ 103.6(c)(3), 6(e); *Ahmed v. United*

*States, supra.* None of these authorities provides for an evidentiary hearing prior to such a declaration. In Counts I, III and IV, plaintiffs allege, *inter alia,* that this absence of an evidentiary hearing constitutes a denial of procedural due process as guaranteed by the Fifth Amendment.

In support of this position, plaintiffs rely primarily on *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which held that a pre-termination hearing is constitutionally required before a state may terminate welfare benefits. In similar decisions, the Supreme Court has ruled that the absence of a hearing prior to the garnishment of wages, *Sniadach v. Family Finance Corporation,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); revocation of a driver's license, *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); repossession of consumer goods, *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and termination of a tenured professor's employment at a public institution, *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), denies procedural due process. In each of these cases, the weight and immediacy of the individual stake outweighed government administrative and fiscal interests. *Goldberg* is the salient example, the Court concluding that the immediate termination of welfare benefits resulted in loss of the "very means by which to live." 397 U.S. at 264, 90 S.Ct. at 1018. See discussion in *Brown v. Lynn,* 385 F.Supp. 986, at 995–96 (N.D.Ill.1974) (Will, J.).

In applying the *Goldberg* rule, the court is required to balance the administrative and fiscal interests of the government against the individual interests involved and the extent to which the individual faces imminent loss or injury. *Brown v. Lynn, supra,* at 995. In the case at bar, plaintiffs have neither alleged in the complaint nor otherwise demonstrated that interests comparable to those in *Goldberg* are at stake. In their memorandum in opposition to defendant's motion to dismiss, plaintiffs do assert that Stuyvesant will be "delisted" from the Department of Treasury schedule of available sureties and the plaintiff agents will lose their contracts as brokers for Stuyvesant, presumably as a result of a declaration of breach. Assuming that such results do occur, it is not clear that an evidentiary hearing prior to declaration would change them. More importantly, however, plaintiffs have cited no regulation or contractual provision indicating that either "delisting" or loss of brokerage contracts would obtain upon a declaration of breach. There is, furthermore, no showing that either result has in the past occurred under circumstances similar to those alleged.

The only other possible injury upon a declaration of breach is the obvious financial one, the surety's loss of the principal amount. The regulations provide for notice to the obligor coupled with a request for payment upon a declaration of breach. 8 CFR 103.6(e). This request for payment does not in and of itself establish the immediacy of loss required for the application of the *Goldberg* rule. If the surety who wishes to contest the breach does not voluntarily pay the principal obligation upon the request, the United States must institute court proceedings to enforce the obligation. Until judgment compelling payment is entered, and the surety accordingly pays the principal, plaintiffs suffer no financial injury. Even after payment, the surety may recover its loss against the alien.

 Plaintiffs do not assert, and this court has no reason to assume, any procedural inadequacy in proceedings instituted to enforce the bond. The Fifth Amendment does not require two hearings in the same case when one is constitutionally sufficient. *Goldberg v. Kelly,* 397 U.S. 254 n. 14, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Brown v. Lynn,* 385 F.Supp. 986, at 995 (N.D.Ill.1974). The court therefore holds that the absence of an evidentiary hearing prior to declaration of breach of an immigration bond by the District Director does not constitute a denial of due process. It follows

that due process does not require that defendant adduce evidence prior to declaration. See *United States v. Davis*, 202 F.2d 621 (7th Cir. 1953).

## B.

### Laches

In Counts I, III, and IV of the complaint, plaintiffs allege that defendant is "estopped" from enforcing the Moore, Arroyo, and Zabadneh bonds because of the District Director's delay of two years, eighteen months, and one year, respectively, after the actual breach, in declaring the breaches and notifying plaintiffs of them. Additionally in Count IV, plaintiffs aver that defendant is estopped to enforce the Zabadneh bond because plaintiffs were not notified of a request that Zabadneh depart the United States. Defendant counters that the doctrine of estoppel is not applicable against the United States.

While the plaintiffs have urged a rule styled "estoppel by laches," and defendant has briefed the point as if it were one of estoppel, neither characterization is precise. "Estoppel" defeats a claim or defense when a party has changed position in reliance on an affirmative action or representation of another party who subsequently seeks to disavow the prior action. In contrast, when the doctrine of "laches" is applied, a party is held to have waived a claim or defense by inaction or delay. Statutes of limitations are codified embodiments of the equitable doctrine of laches. It is true that the operation of the doctrines of estoppel and laches produces the same result, and that the cases suggest parallel legal development. Perhaps to that extent, case law relating to estoppel is helpful in placing the laches case at bar in appropriate legal perspective. Different principles, however, operate in the application of the doctrines. Compare *Gestuvo v. District Director*, 337 F.Supp. 1093 (D.C.Cal.1971) and *Costello v. United States*, 365 U.S. 265, 281, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961).

Theoretically rooted in the doctrine of sovereign immunity and the policy of preserving the public fisc, the early decisions uniformly ruled that neither estoppel nor laches could be applied against the United States. *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) (laches); *Board of Commissioners v. United States*, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313 (1939) (laches); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224 (1938) (laches); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (estoppel); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917) (estoppel). *See also*, *Pearson v. Williams*, 202 U.S. 281, 26 S.Ct. 608, 50 L.Ed. 1029 (1906) (Holmes, J.). More recently, the cases have suggested a more relaxed view of the doctrine of estoppel as applied against the United States. *United States v. Fox Lake Bank*, 366 F.2d 962 (7th Cir. 1966); *Gestuvo v. District Director, supra.*

The traditional view of laches prevails in immigration matters, however. In *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), the Supreme Court held, *inter alia*, that a delay of 27 years in bringing denaturalization proceedings was no bar to the Government's action. The Court went on to observe that even assuming the applicability of laches against the United States, there was no proof establishing the two essential elements of the doctrine: lack of diligence by the party against whom the defense is asserted, and prejudice to the party asserting the defense.

Assuming, without deciding, that the first element, lack of diligence, exists in the case at bar, plaintiffs have neither alleged nor otherwise shown sufficient prejudice to warrant application of laches. In the complaint, plaintiffs have not alleged any specific injury suffered as a result of the defendant's delay. In their memorandum in opposition, they do assert that the defendant's delay produces a likelihood that plaintiffs will

have "lost the possibility of ever collecting from those who signed as securities." Loss of the possibility of collection the surety must accept as a risk incident to his occupation. Cognizant of the risks of absconding aliens and others who may have signed the bonds, sureties charge premiums in return for obligating themselves on the bonds. Plaintiffs have not demonstrated that this risk is any more acute after actual breach than before. There is no reason to assume that an alien who has failed to appear at the originally designated date will be more difficult to find later. It is even arguable that an alien scheduled to depart on a date may be more difficult to find at that time than a year later, when he may have assumed that he is safely out of reach of immigration officials and sureties. Moreover, as a matter of law the surety's liability accrues at the time of breach. It does not require the declaration of the District Director to alert the surety standing to forfeit principal of the advisability of searching for the alien and any others who may be obligated to the surety. The Court of Appeals for the Seventh Circuit has, with regard to the traditional bail bond, commented that:

> "The bond is a contract between the surety and the government that if the latter will release the principal from custody the surety will undertake that the principal will appear personally at any specified time and place to answer. Upon the failure of the principal to so appear, the surety becomes the absolute debtor of the United States for the amount of the penalty. *United States v. Hickman*, 7 Cir., 155 F.2d 897. Appellant's husband must accept the hazards of his occupation. When he writes a bond he assumes the great risk involved if his faith is misplaced in the person who executes the bond as principal."

*United States v. Davis*, 202 F.2d 621, 625 (7th Cir. 1953).

The regulations, moreover, specify no time within which a breach must be declared, and require notice only upon dec-

laration. 8 CFR 103.6(e). And it is settled that delay in proceeding against the principal will not discharge the surety. *United States v. Glens Falls Insurance Co.*, 279 F.Supp. 236, 241 (E.D.Tenn. 1967).

## C.
### Vagueness

Plaintiffs claim that the term "date admitted to or extended to" in the maintenance of status and departure bonds of Moore and Zabadneh is so vague as to render the bonds impossible to perform and therefore unenforceable. Without responding directly, defendant counters that plaintiffs in signing the bond agreed to be bound by that term, which appears typewritten in a blank space for indicating the alien's departure date. The bonds provide in pertinent part as follows:

> "If said alien is admitted to the United States for a temporary period as a nonimmigrant, or is granted an extension of temporary admission, or is granted a change in nonimmigrant classification, and if said alien shall comply with all the conditions of each specific immigrant status which he is accorded while classified in such status, including the condition that unauthorized employment shall not be accepted, and actually departs from the United States without expense thereto on or before *date admitted to or extended to* or such subsequent date as may be authorized in extension of his lawful temporary stay beyond such date, without notice to the obligor, then this obligation shall be void; otherwise it shall become due and payable immediately in the sum of ___ dollars (\$___) for each alien as to whom there shall have been a failure to comply with any of the foregoing conditions . . . ."

■ The court will assume that because the actual date for departure of the alien is not specified, plaintiffs are unable to ascertain from the face of the bond the time for performance by the

alien. This assumption if accurate would not, without more, justify invalidation of the bond on grounds of vagueness. At least with respect to agreements for the sale of goods made without expression of time for delivery or payment, "[s]eldom will it be held that this makes it too uncertain for enforcement." A. Corbin, Corbin on Contracts, § 96. In another section of his treatise, Professor Corbin concludes that "[e]ven though the parties have expressed an agreement in terms so vague and indefinite as to be incapable of interpretation with a reasonable degree of certainty, they may cure this defect by their subsequent conduct and by their own practical interpretation." *Id.*, § 101. *Weston Paper Mfg. Co. v. Downing Box Co.*, 293 F. 725 (7th Cir. 1923); *Liberty Industrial Sales, Inc. v. Marshall Steel Co.*, 272 F.2d 605 (7th Cir. 1959). It has been held, furthermore, that a surety executing a bond knowing that blanks must be filled in after execution agrees to the subsequent completion of the blanks. *City of Chicago v. Gage*, 95 Ill. 593 (1880).

Because it leaves open the actual date, the term "date admitted to or extended to" is not unlike the blanks to be completed in *Gage, supra.* With respect to both Moore and Zabadneh in the case at bar, the District Director gave meaning to the term by granting explicit extensions. Plaintiffs agreed that such extensions would be granted "without notice to the obligor." In regard to the Moore bond, furthermore, the administrative judge found that plaintiff Stuyvesant has in the past executed without complaint a number of immigration bonds containing the term "admitted to or extended to." The court concludes that in view of the subsequent extensions, the waiver of notice to the obligor of the extensions, and the practice of executing bonds containing the term objected to, the bonds are not, as plaintiffs suggest, "impossible to perform," and therefore unenforceable.

For the reasons expressed in this opinion, defendant's motion to dismiss, treated, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, as a motion for summary judgment under Rule 56, will be, and the same hereby is, allowed, there being no genuine issues of material fact as plaintiffs' failure to exhaust administrative remedies with respect to Count II nor the due process, laches and vagueness claims in Counts I, III and IV, and defendant being entitled to judgment as a matter of law on all of these counts.