Kazi S. AHMED, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 722, Docket 72-2003.

United States Court of Appeals, Second Circuit.

Argued April 17, 1973.

Decided June 11, 1973.

---

**532**

David A. Englander, Englander & Englander, New York City, for plaintiff-appellant.

Joseph P. Marro, Stanley H. Wallenstein, Asst. U. S. Attys., Whitney North Seymour, Jr., U. S. Atty., for defendant-appellee.

Before CLARK, Associate Justice,[*] and WATERMAN and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

Plaintiff-appellant commenced the within action pursuant to 28 U.S.C. § 1346(a)(2) demanding that the Government return to him United States Treasury Bonds in the sum of $2,000 or pay him the equivalent in cash. The facts are undisputed and, upon cross-motions for summary judgment, the court below denied plaintiff's motion and granted that of the Government. From the order filed thereon plaintiff appeals. We affirm.

In October, 1969 plaintiff's nephew Islam first applied to the American Consulate in Dacca, Pakistan, for permission to travel to the United States as a student. At that time he was advised of the appropriate procedures and he was informed that, pursuant to regulations established by the Attorney General under Section 214 of the Immigration and Nationality Act (Act) (8 U.S.C. § 1184 (a)) [1] he would be required to post a $2,000 Maintenance of Status and Departure Bond to insure that he would comply with the conditions of his entry to the United States. One of the conditions stated in the Bond, a condition designed, of course, to preserve American jobs for bona fide members of the American labor force, was that, being admitted as a foreign student, during Islam's stay in the United States as a student, Islam would not accept "unauthorized employment," that is, employment that had not received prior approval from the Service.[2]

On November 6, 1969 the plaintiff, Islam's uncle, appeared at the New York City office of the Service and executed the required bond on Islam's behalf. Thereafter, on January 13, 1970, Islam was admitted to the United States as a non-immigrant student within the meaning of Section 101(a)(15)(F)(i) of the Act (8 U.S.C. § 1101(a)(15)(F)(i)); and he was authorized to remain here as a student for a one year period, or until January 12, 1971. On May 12, 1970, approximately four months after his arrival, Islam married Ranette Scott, an American citizen. On June 1 she filed on Islam's behalf a petition to have him clas-

---

[*] Associate Justice of the United States Supreme Court (Retired), sitting by designation.

[1]. 8 U.S.C. § 1184(a) reads:

(a) The admission to the United States of any alien as a non-immigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe, including when he deems necessary the giving of a bond with sufficient surety in such sum and containing such conditions as the Attorney General shall prescribe, to insure that at the expiration of such time or upon failure to maintain the status under which he was admitted, or to maintain any status subsequently acquired under section 1258 of this title, such alien will depart from the United States.

[2]. 8 C.F.R. § 214.2(f)(3) states:

(3) Employment. An application by a student for permission to accept or continue employment shall be filed on Form I-538. If a student requests permission to accept part-time employment because of economic necessity, he must establish that the necessity is due to unforeseen circumstances arising subsequent to entry, or subsequent to change to student classification, and an authorized school official must certify that part-time employment will not interfere with the student's ability to carry successfully a full course of study.

sified as an immediate relative of a United States citizen within the meaning of Section 201(b) of the Act (8 U.S.C. § 1151(b)).[3] Thereafter, on October 26, 1970, after being notified on October 7, 1970 that this petition for immediate relative classification was approved, Islam applied, under Section 245 of the Act (8 U.S.C. § 1255), for an adjustment of his non-immigrant student status to that of a permanent resident. This application was granted by the Service on December 29, 1970.

In July 1970, after Islam's wife had filed the petition for his classification as an immediate relative of a United States citizen, but before this petition was granted by the Service, Islam began to work at plaintiff's restaurant. Islam had never requested and had never received any prior authorization from the Service permitting him to work. Plaintiff concedes that when he employed Islam during the pendency of Ranette's petition a material condition of the Maintenance of Status and Departure Bond was violated; but inasmuch as Islam could have worked after his own application for permanent residency was filed on October 26, 1970 without Service authorization being first obtained[4] plaintiff maintains that the fact that Islam began work in July is a "technical" rather than a "substantial"[5] violation of the condition prohibiting employment of the "student." Therefore he claims this breach cannot be relied on as a justification for declaring that the bond be forfeited and the collateral put up to secure it retained.

We agree with the plaintiff that under the regulations promulgated by the At-

3. Immediate relatives of United States citizens may be admitted to the United States for permanent residency irrespective of the numerical quota limitations contained in the Act. Section 201 (a) of the Act (8 U.S.C. § 1151(a)). To become a permanent resident the alien who has been classified as an immediate relative must file an application to adjust his status to that of a permanent resident under Section 245 of the Act (8 U.S.C. § 1255). Thus the process for becoming a permanent resident is two-staged: First, the non-immigrant must petition for classification as an immediate relative; then, after this petition is granted, he may file an application for permanent residency under Section 245. Under current Service regulations, only after he has filed for permanent residency under Section 245 may the alien commence employment without Service authorization.

4. Thus, 8 C.F.R. § 103.6(c)(2) provides:
   (2) Maintenance of status and departure bonds . . .
   If an application for adjustment of status is made by a nonimmigrant while he is in lawful temporary status, the bond shall be canceled if his status is adjusted to that of a lawful permanent resident or if he voluntarily departs within any period granted to him. As used in this subparagraph, the term "lawful temporary status" means that there must not have been a violation of any of the conditions of the alien's non-immigrant classification by acceptance of unauthorized employment or otherwise during the time he has been accorded such classification, and that from the date of admission to the date of departure or adjustment of status he must have had uninterrupted Service approval of his presence in the United States in the form of regular extensions of stay or dates set by which departure is to occur, or a combination of both. *An alien admitted as a non-immigrant shall not be regarded as having violated his non-immigrant status by engaging in employment subsequent to his proper filing of an application for adjustment of status under section 245 of the Act and Part 245 of this chapter.* A maintenance of status and departure bond posted at the request of an American consular officer abroad in behalf of an alien who did not travel to the United States shall be canceled upon receipt of notice from an American consular officer that the alien is outside the United States and the non-immigrant visa issued pursuant to the posting of the bond has been canceled or has expired. (Emphasis added).

5. 8 C.F.R. § 103.6(c)(3) provides that an obligor shall be released from liability where there has been substantial performance of all conditions imposed by the terms of the Bond. 8 C.F.R. § 103.6(e) provides that a "bond is breached when there has been a substantial violation of the stipulated conditions."

torney General pursuant to his authority under Sections 103(a) and 214 of the Act (8 U.S.C. §§ 1103(a) and 1184(a)) a Maintenance of Status and Departure Bond may be declared forfeited by the Service only after the finding has been made that a material condition of the Bond has been violated in a substantial particular. See 8 C.F.R. §§ 103.6(c)(3) and 103.6(e). Such a finding was made by the Service and plaintiff exhausted his administrative remedies prior to commencing his action in the district court.[6] The court below agreed with the Service and we agree with the lower court that the Maintenance of Status and Departure Bond was violated in a substantial way when Islam accepted employment in the obligor-plaintiff's restaurant without first having obtained Service approval. All the cases establish this principle. See Earle v. United States, 254 F.2d 384 (2 Cir.), cert. denied, 358 U.S. 822, 79 S. Ct. 35, 3 L.Ed.2d 63 (1958); Watzek v. United States, 134 F.Supp. 605 (S.D.N.Y. 1955); Kavounas v. United States, 89 F. Supp. 689, 116 Ct.Cl. 406 (1950). In each of these cases the Bond was forfeited because the alien accepted unauthorized employment.

Irrelevantly, plaintiff seeks to avoid his own liability by pointing out that, when Islam married, Islam became responsible for the support of his wife, and that this responsibility necessarily entailed the finding of employment and excused Islam's act of working and plaintiff's act of hiring him.

Plaintiff overlooks his direct obligation to the Government as obligor on a bond containing the specific condition that Islam would not accept unauthorized employment. Though the Service would not deport the "student," now married to a United States citizen and now here as an alien permanent resident, who,

without authorization, unilaterally entered the labor market, whereby the bond was breached, this fact does not excuse the obligor on the bond.

Judgment affirmed.

---

6. On March 17, 1971 the Deputy District Director of the Immigration and Naturalization Service (Service), found that plaintiff's nephew had breached a material condition of the Bond by accepting employment at the plaintiff's restaurant without having first received the prior authorization of the Service, and declared the bonds forfeited. Plaintiff appealed to the Regional Commissioner of the Service, but, in a written opinion dated November 3, 1971, the Regional Commissioner upheld the Deputy Director's declaration of forfeiture.