**Immacula MOHOMED, as obligor, Plaintiff,**

v.

**George VICIAN, Jr., District Director, Immigration and Naturalization Service, Defendant.**

**No. 79 Civ. 4908.**

United States District Court, S. D. New York.

May 28, 1980.

David Scheinfeld, New York City, for plaintiff.

William M. Tendy, U. S. Atty., S. D. N. Y., New York City, for defendant; Katherine J. Trager, Asst. U. S. Atty., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

### I

On November 24, 1975, Sante Rose Azard, a Haitian national, was admitted to the United States as a temporary visitor for pleasure on a visitor's visa which allowed

her to stay until May 23, 1976.[1] As a condition of her admission, the Immigration and Naturalization Service ("INS" or "the Service") required that a maintenance of status and departure bond ("bond") in the amount of $1,000 be furnished, pursuant to § 214(a) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1184(a).[2] This statutory provision states that the purpose of the bond is to insure that the alien will depart the United States upon expiration of her authorized stay and will maintain her nonimmigrant status. The bond was posted by plaintiff Immacula Mohomed, Azard's granddaughter, as surety.

On May 17, 1976, Azard requested an extension of her departure date to enable her daughter, Antonia Bonheur, to file an immigrant visa on her behalf. According to plaintiff, an immigration officer granted Azard 29 days extension for this purpose.[3]

At an interview on May 25, 1976, relating to Azard's visa petition and Bonheur's citizenship application, an INS investigator apparently informed Azard that the bond was not breached because she had received, before the departure date required by her visa, an extension of time to depart.

The extension received by Azard on May 17, expired on or about June 21, 1976, but Azard did not leave the country. Instead, she remained and pursued her petition for an immigrant visa, requesting that the Service grant her indefinite voluntary departure. On August 18, 1976, Azard was granted permission to remain in the United States from August 16, 1976 to August 17, 1977.[4]

On May 23, 1977, Azard applied for adjustment of her status to that of permanent resident pursuant to § 245 of the Act, 8 U.S.C. § 1255. This application was approved on November 8, 1977.

Soon thereafter, plaintiff requested the defendant INS District Director to cancel the bond and return the money to her. The request was denied by notice of December 20, 1977, informing plaintiff that the bond had been breached on May 24, 1976, because Azard had failed to either depart from the United States or to apply for an extension of her stay by that date.

Plaintiff's appeal of this determination was denied by the Regional Commissioner of INS on May 17, 1978. He found that even if Azard had been granted a 29 day extension on May 17, 1976, she had overstayed that extension by remaining without authorization until August 18, 1976, and, therefore, had substantially violated the terms of the bond. Plaintiff then instituted this suit for an order compelling the return to her of the money posted for the bond. The complaint contains two allegations of INS error:

(1) that defendant erred in determining that the bond was breached on May 24, 1976, because Azard had requested voluntary departure prior to the expiration of her visa and continued her presence in the United States with the approval of the INS;
(2) that because plaintiff was not afforded notice and an opportunity to be heard prior to the determination of breach, she was

---

1. Azard originally attempted to enter the United States on November 18, 1975. The immigration officer, uncertain of Azard's admissibility, paroled her into the country for deferred inspection in New York, pursuant to sections 212(d)(5), (6) and 235(b) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5), (6), § 1225(b).

2. Section 214(a) of the Act, 8 U.S.C. § 1184(a) provides:
   (a) The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe, including when he deems necessary the giving of a bond with sufficient surety in such

sum and containing such conditions as the Attorney General shall prescribe, to insure that at the expiration of such time or upon failure to maintain the status under which he was admitted, or to maintain any status subsequently acquired under Section 1258 of this title, such alien will depart from the United States.

3. For the purpose of these motions, defendant assumes that Azard was granted this extension on May 17, 1976.

4. According to plaintiff, Azard was granted indefinite voluntary departure on August 18, 1976.

deprived of property without due process of law in violation of the fifth amendment to the Constitution.

Defendant maintains that Azard breached the bond by remaining in the United States without INS authorization from June 21, 1976, to August 18, 1976, and that no hearing is constitutionally required before a determination of breach.

Both parties have moved for summary judgment, agreeing that no dispute exists as to a material fact. For the reasons discussed below, defendant's motion is granted.

## II

The regulations promulgated by the Attorney General pursuant to § 103(a) of the Act, 8 U.S.C. § 1103(a), to effectuate the bond requirements contained in § 214(a) of the Act, 8 U.S.C. 1184(a), provide that the obligor of a bond shall be released upon the substantial performance of all its conditions, 8 C.F.R. § 103.6(c)(3), and that a substantial violation of the stipulated conditions constitutes a breach. 8 C.F.R. § 103.-6(e).

The bond furnished for Azard provided in relevant part:

the obligor hereby furnishes such bond with the following conditions. If said alien is admitted to the United States for a temporary period as a nonimmigrant or is granted an extension of temporary admission, or is granted a change in nonimmigrant classification, and if said alien shall comply with all the conditions of each specific nonimmigrant status which he is accorded while classified in such status . . . and actually departs from the United States without expense thereto on or before the date to which he is authorized to remain in the United States or such subsequent date as may be authorized in extension of his lawful temporary stay beyond such date, without notice to the obligor; then this obligation shall be void, otherwise it shall immediately become due and payable. . . .

Plaintiff concedes that Azard remained here beyond the 29-day extension granted her, but argues that this did not constitute a "substantial violation" of the bond because Azard did not wilfully or negligently disobey an express directive requiring her to leave. According to plaintiff, Azard had INS approval to remain here because she had requested indefinite voluntary departure before her visa expired. The INS, in contrast, argues that Azard substantially violated the bond by breaching one of its essential terms—departure at the end of the authorized period. Therefore, the meaning of "substantial" in the applicable regulations is critical to resolution of this case.

## III

In light of the plenary power of Congress to establish criteria for the admission of aliens to this country, *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972), it is not surprising that the courts of this circuit have upheld the bond requirements of the Act and the regulations promulgated by the Attorney General to effectuate these requirements. *See, e. g., Ahmed v. United States*, 480 F.2d 531, 533–34 (2d Cir. 1973); *Earle v. United States*, 254 F.2d 384, 386–87 (2d Cir.), cert. denied, 358 U.S. 822, 79 S.Ct. 35, 3 L.Ed.2d 63 (1958); *International Fidelity Ins. Co. v. Chapman*, 76 Civ. 1485 (S.D.N.Y.1977) (Werker, J.).

Moreover, a reviewing court must apply an agency's interpretation of its own regulations unless such interpretation is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see Nazareno v. Attorney General*, 512 F.2d 936, 939–40 (D.C. Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975).

The Service clearly considers any unauthorized stay, however short, to constitute a substantial violation of the conditions of a maintenance of status and departure bond. *See Matter of Nguyen*, INS Interim Decision # 2344 (1975) (27 day period of unauthorized stay is a substantial breach of such a bond); *accord, International Fidelity*

*Ins. Co. v. Chapman, supra.* According to the Service, it is the materiality of the departure provision, rather than the length of the unauthorized stay which determines the substantiality question. *See Ahmed v. United States, supra*, 480 F.2d at 534. This interpretation is neither erroneous nor inconsistent with the regulation, for it accords with the purpose of the bond itself—to insure that aliens, admitted as nonimmigrants, comply with the terms of their authorized stays. 8 U.S.C. § 1184(a).

Plaintiff argues that the bond should be cancelled because Azard applied for indefinite voluntary departure before her visa expired. 8 C.F.R. § 103.6 provides that:

> If an application for adjustment of status is made by a nonimmigrant while he is in lawful temporary status, the bond shall be canceled if his status is adjusted to that of a lawful permanent resident or if he voluntarily departs within any period granted to him.

Plaintiff argues that Azard falls within this provision because she applied for an extension of her departure time while she was in "lawful temporary status." There are two defects in this argument: First, a request for an extension of time to depart is not an application for adjustment of status. The former is addressed solely to the discretion of the INS District Director and his decision is not appealable. 8 C.F.R. § 244.2. The latter is an application to become a permanent resident of the United States and is governed by section 245 of the Act, 8 U.S.C. § 1255, and 8 C.F.R. § 245. That plaintiff was aware of the difference between a request for voluntary departure and an application for adjustment of status is evident from plaintiff's papers and the record in this case. While plaintiff's counsel requested indefinite voluntary departure for Azard by letters of May 17, May 21, and May 24, 1976, Azard first applied for adjustment of her status by formal application in May, 1977.

Second, even though Azard's status was adjusted to that of permanent resident while she had the Service's permission to be here (from August 16, 1976, to August 17, 1977), she was not in lawful temporary status as of August, 1976. 8 C.F.R. § 103.6(c)(2) provides:

> As used in this paragraph, the term "lawful temporary status" means that there must not have been a violation of any of the conditions of the alien's nonimmigrant classification . . . during the time he has been accorded such classification, *and that from the date of admission to the date of departure or adjustment of status he must have had uninterrupted Service approval of his presence in the United States in the form of regular extensions of stay or dates set by which departure is to occur, or a combination of both.* (emphasis added).

The only extension of stay granted to Azard expired on or about June 21, 1976. The fact that the Service did not formally order her to depart subsequent to that date is immaterial, for she received no further extension. Continued processing of her application beyond that date, even with the knowledge of some INS officials that she had overstayed her departure date, cannot be construed as a "regular extension of stay or date set by which departure is to occur."

Since plaintiff presents no persuasive reason for cancellation of the bond, and since Azard's conceded violation was substantial under the Service's reasonable interpretation of its regulations, the defendant's determination that the bond was breached must be upheld.

IV

Finally, plaintiff contends that the lack of notice and an opportunity to be heard prior to defendant's determination of breach constituted the taking of her property without due process of law under *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). This argument can be dismissed without extended discussion.

The bond specifically provided that, in the event of default, no prior notice was

required before the Attorney General could appropriate the funds. Plaintiff read and agreed to this term, and does not now maintain that she failed to understand it. Moreover, the applicable regulation, 8 C.F.R. § 103.6(e), does not require prior notice by the Service before a determination of breach. Plaintiff offers no cogent argument in support of her claim that prior notice and hearing are constitutionally required in this case. Plaintiff paid the bond when it was executed, in November, 1975, and did not apply for its cancellation until late in 1977. She does not claim that the loss of the $1,000 was grievous to her.

■ The fundamental requirement of procedural due process is an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Due process does not necessarily require a pre-deprivation hearing. *Ingraham v. Wright,* 430 U.S. 651, 701, 97 S.Ct. 1401, 1427, 51 L.Ed.2d 711 (1977) (Stevens, J., dissenting).

The claim to a pre-deprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a post-deprivation hearing. *Mathews v. Eldridge, supra,* 424 U.S. at 331, 96 S.Ct. at 900. Plaintiff must raise a colorable claim that an erroneous deprivation made prior to a hearing would damage her in a way that could not be recompensed retroactively. *Id.* Particularly in property cases, post-deprivation remedies have been held adequate when they can make the aggrieved party completely whole. *Ingraham v. Wright, supra,* 430 U.S. at 701, 97 S.Ct. at 1427 (Stevens, J., dissenting); *see Regional Rail Reorganization Act Cases,* 419 U.S. 102, 156, 95 S.Ct. 335, 365, 42 L.Ed.2d 320 (1974).

In this case, plaintiff has not advanced any claim that the lack of a prior hearing caused her to suffer an injury was not fully remediable at a later time. Moreover, she had full opportunity to object to the forfeiture upon appeal to the Regional Commis-

sioner. In these circumstances, plaintiff's due process rights were not violated.

Judgment for defendant. IT IS SO ORDERED.