# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 1, 2022

## JASE ENTERPRISES LLC v. TENNESSEE BUREAU OF WORKERS' COMPENSATION

**Appeal from the Chancery Court for Henderson County**
**No. 27439    James F. Butler, Chancellor**

---

## No. W2021-00448-COA-R3-CV

---

This appeal concerns a penalty assessed against a company by the Tennessee Bureau of Workers' Compensation ("the Bureau"). The Bureau assessed a penalty against Jase Enterprises, LLC ("Jase"), a construction company owned by Jason Usery ("Usery"), for failure to secure workers' compensation insurance coverage. After a contested case hearing, the administrative law judge ("the ALJ") upheld the penalty assessment but modified its amount. Jase petitioned for judicial review in the Chancery Court for Henderson County ("the Trial Court"). The Trial Court upheld the ALJ's decision. Jase appeals to this Court, arguing among other things that it was not afforded due process and that the decision to assess a penalty against it was arbitrary. In particular, Jase argues that the evidence did not establish that Joe Sheldon ("Sheldon") was a Jase employee. We find that Jase was afforded due process; it received adequate notice and had an opportunity to be heard. We find further that the penalty assessment against Jase was supported by substantial and material evidence, including Sheldon's deposition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY W. ARMSTRONG, JJ., joined.

Hailey H. David, Jackson, Tennessee, for the appellant, Jase Enterprises, LLC.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Erica M. Haber, Assistant Attorney General, for the appellee, the Tennessee Bureau of Workers' Compensation.

# OPINION

## Background

In April 2019, the Bureau issued its Agency Decision Assessing a Civil Penalty for Failure to Secure Workers' Compensation Insurance Coverage against Jase, assessing a penalty of $37,457.32 for Jase's failure to secure workers' compensation insurance coverage for a period beginning in 2015.[1] It was and is Jase's position that, at all relevant times, it had no employees apart from Usery, who obtained an exemption for himself. In May 2019, Jase requested a contested case hearing. In July 2019, a contested case hearing was conducted before the ALJ, Robert R. Davies. In August 2019, the ALJ entered an order upholding the penalty assessment against Jase but modifying the penalty's amount. In its Order Modifying a Penalty Assessment, the ALJ set out the history of the claim as follows:

> Jason Usery has worked in the construction services industry for many years. Previously, he operated under the name of Jason Usery Construction, LLC beginning in approximately 2003 and operating as a general contractor until sometime in 2013 when his health failed. Mr. Usery developed blood clots in his legs and also had knee surgery. His construction business tapered off due to his illness and a slow building economy in his area. He let his corporation be administratively dissolved.

> However, Jason Usery Construction, LLC was penalized by Agency Decision dated August 28, 2015 for operating as a limited liability corporation without workers' compensation insurance coverage for the period of time including March 28, 2013 through the time the Agency Decision was entered in August of 2015. Mr. Usery did not contest the August 2015 Agency decision claiming that he was not aware of it even though the USPS tracking system marked it as "delivered."

> Sometime in 2014 or 2015, Mr. Usery formed Jase Enterprises, LLC and registered with the Workers' Compensation Exemption Registry. He testified that he was more of a "construction manager" rather than a general contractor. Jason Usery and Jase [E]nterprises, LLC maintain a Facebook account advertising all types of construction services and projects, including turnkey construction, framing and installation of basement blocks.

---

[1] Usery, his wife, and various entities other than Jase were included in the initial assessment. These parties later were dismissed. Jase is the sole appellant.

On or about July 25, 2017, Mr. Joe Vance Sheldon was injured on a job site in Clarksburg, TN while putting decking on a roof. Mr. Sheldon claims he was working for Jason Usery and/or Jase Enterprises, LLC. Mr. Sheldon's work accident occurred on his second day of work and he had not yet been paid for his services. He claims there were other workers present at the job site. On direct examination in his deposition taken for proof, Mr. Sheldon indicates that Mr. Usery supplied all the materials, supplies and tools other than maybe a hammer. Although he had not yet been paid for his services, he estimated his pay to be approximately $500.00 per week, to be paid by Jason Usery and or Jason Usery Enterprises, LLC. However, on cross-examination, he testified that he didn't actually know who paid for or delivered the supplies to the job site. He just assumed they were Jason Usery's.

After Mr. Sheldon's accident Jason Usery paid him regular payments of somewhere in the neighborhood of $328.00 per week, for a total of approximately $2,800.00. Mr. Usery admits making certain payments to Mr. Sheldon after the accident, indicating that it was just "a neighborly thing to do." Ms. Suzanne Usery also admitted that payments were made to Mr. Sheldon after the work accident, indicating that it was not unusual for the Sheldon's to ask for money. In addition, on the day of the accident, Mr. Usery picked up Mr. Sheldon and took him to the workplace.

The penalty assessed by the Bureau of Workers' Compensation and contained in the Agency Decision dated April 24, 2019, was based on an estimated premium of $12,408.67. The case was investigated by Benjamin Edwards, Compliance specialist, Bureau of Workers' Compensation, which investigation included, but was not limited to, contact with Mr. Usery, research from the Bureau's administrative staff, Employer Questionnaire Form, Request for Information Form, Internet/Facebook searches, NCCI [National Council on Compensation Insurance] documentation, permit reviews and a personal visit to Mr. Usery's home. The penalty calculation was also reviewed by Misty McGrady, the Bureau's in-house auditor who utilized the method suggested by the Occupational Employment Statistics Foundation using a median wage for a carpenter in 2017. The estimated premium was based on one (1) employee.

Mr. Usery claims that Mr. Sheldon was not being paid, but was simply working off a debt owed to his Father, Ricky Usery.

(Internal record citation omitted).

-3-

The ALJ noted that Usery did not introduce any financial information or documentation supporting his position at the contested case hearing. The ALJ stated further that the record was devoid of any financial documentation regarding Jase and that Usery testified there was no such documentation. The ALJ determined that Jase was a Tennessee employer engaged in construction services with at least a single employee and was subject to Tennessee's workers' compensation laws. According to the ALJ, "Jason Usery, individually and through his newest limited liability corporation, Jase Enterprises, LLC holds himself and the LLC out to be general contractors with at least one additional employee other than himself." Nevertheless, the ALJ found that the dissolution of Jason Usery Construction, LLC, and the subsequent reformation of Jase, was "done for legitimate business purposes and not simply for the purpose [of] escaping liability." In this regard, the ALJ found Usery's testimony convincing. The ALJ thus upheld the Bureau's penalty assessment against Jase but modified its amount down to $31,021.67.

A major piece of evidence relied upon below was the deposition testimony of Sheldon, the alleged employee of Jase. In his deposition, Sheldon testified, in part:

Q. Okay. Are you familiar with Jason Usery?
A. Yes, ma'am.
Q. How do you know Mr. Usery?
A. We've lived beside him for 16, 17 years. My son, my oldest son, worked for him. I worked for him prior to the accident. They were neighbors and we just got to know each other.

***

Q. So Mr. Usery, at that time, would come by the house and pick you up to go to work?
A. He either -- he would or his dad would.
Q. Where would he take you to?
A. To the job site, wherever we was working.

***

Q. Okay. At the time of the accident, do you recall what the name of the business was that Mr. Usery paid you from or the name of the business that you worked for?
A. I think it was Jase Enterprises or something other -- I never did pay no attention.
Q. Okay.

-4-

A. Because my wife, most of the time, was the one that cashed it.

Q. But you said Mr. Usery is the one that was paying you, though?

A. Yes, ma'am.

Q. And at that time of the accident, was he paying you -- did he ever pay you for the labor that you performed for him, the best of your recollection?

A. I don't know because, I mean, after the accident that was only the second day and I just -- I don't know.

Q. The second day you worked for him. Okay. Could you describe the type of work that you were doing for him.

A. General carpenter, framing.

Q. If you don't mind, please be as specific as you can.

A. I was putting decking on a roof.

Q. Okay. Did Mr. Usery supply the materials?

A. Yeah.

On cross and re-cross examination, Sheldon was asked further:

Q. Okay. And you don't know what individual or business had an agreement with the homeowner at that work site to do work out there? In other words, you don't know if that was Jase Enterprises, if that was Jason Usery Construction --

A. No, I don't know none of those --

Q. -- if that was Jason Usery or if that was somebody else altogether.

A. Right.

***

Q. You were asked some questions about supplies out on the job. You don't know who paid for those supplies.

A. Huh-uh.

Q. You don't know who delivered them to the work site?

A. No, ma'am.

Q. You don't know who the tools belonged to that were at the work site.

A. I assumed they were Jason's --

Q. Do you know that for a fact?

A. No, ma'am, I don't.

Q. I mean, it's possible the homeowner rented out some tools from somebody. You don't know that, do you?

A. No, I don't.

Q. And you said that you received some payments from Mr. Usery.

A. Yeah.

Q. But you don't recall what sort of account that was written on?
A. No, ma'am.
Q. Don't know whose name was on that check?
A. I think it said Jason and Suzanne Usery.
Q. But are you sure about that?
A. Yeah.

\*\*\*

Q. Just to clarify, you said that you don't have any responsibility to the homeowner. But then you also said -- I mean, you don't really know. You're assuming that's the case, correct?
A. I was working for Jason. He was the one that was paying me. They wouldn't have no business coming to me if something was messed up or not built right.
Q. Now, you testified earlier that you didn't get paid by Jason. You don't recall getting paid for the work you performed on those --
A. Right.
Q. -- on that day and a half.

In October 2019, Jase filed a petition for judicial review in the Trial Court pursuant to Tenn. Code Ann. § 4-5-322. In its petition, Jase asserted that the process by which a penalty was assessed against it was unconstitutional; that the ALJ's order upholding the imposition of a penalty against Jase was arbitrary, capricious, and an abuse of discretion or clearly unwarranted exercise of discretion; and that the ALJ's order upholding the imposition of a penalty against Jase was unsupported by substantial and material evidence. In February 2020, the Trial Court heard Jase's petition. In April 2021, the Trial Court entered its final judgment ruling in favor of the Bureau. The Trial Court attached to its final judgment a detailed letter containing its rationale. In its letter, the Trial Court stated, in part:

> In this case, the Court observes that the notice given by the Bureau was some five pages in length and set out details regarding Jase's failure to secure payment of compensation through insurance. Specifically, the notice outlined the results of the Bureau's investigation, set forth the relevant period at issue, identified how Jase was in non-compliance, pointed to the notices given to Jase, and pointed out the Administrator's designee assessment of the penalty and how it was assessed. The notice pointed out that the employer would be required to either secure workers' compensation insurance coverage, or show the Bureau to its satisfaction as to why it is not subject to

the requirement to secure workers' compensation insurance in accordance with the [Workers' Compensation Law].

The Court further finds that the notice of the Contested Case hearing as appears on page 183-187 of the Agency Record, specifically refers to the Agency decision assessing a civil penalty. It provides the date, time and place of the hearing. It states the Petitioner has the burden of proof to show why it should not be subjected to the monetary penalties specified in the Agency decision. The Agency decision was some four pages long and was served on the Petitioner's attorney. The notice provided information as to the allegations against Petitioner. It also provided information as to what would happen if the Petitioner did not secure the requisite insurance.

[Jase] claims that the statute [Tenn. Code Ann. § 4-5-307, governing notice in a contested case] is deficient since it does not require the Agency or the Bureau to provide sufficient information concerning the claim. Petitioner points out that it would have little information if it had not engaged in discovery. The Court finds that this claim is without merit in that the notice of the Contested Case hearing was adequate to convey the requirements required by the statute which is set forth in the statute. More is not required. It is clear that through discovery Petitioner can obtain more detail if desired. Petitioner was afforded an opportunity to contest the penalty assessment and availed itself of that opportunity. The Court finds that [the] notice and the procedures afforded to the Petitioner in this case satisfied the requirements of the Due Process Clause of the United States Constitution and the Tennessee statute.

Jase also claims it was not afforded due process arguing that the process by which the penalty was assessed is unconstitutional, i.e., that Jase was required to bear the burden of proof at the Contested Case hearing and that the law did not require the Agency to state with specificity the facts and evidence on which it assessed the penalty. Jase asserts the burden of proof should be on the Bureau. However, Jase points to no authority compelling a state agency to adapt the standards and procedures of a court trial. The relevant statute, TCA § 50-6-412 (e)(4) provides that the employer has the burden of proof at the Contested Case hearing and shall produce documentary evidence that the penalties should be reduced, that the employer is not subject to this chapter, or that the employer was in compliance with this chapter. Jase was afforded this opportunity and availed itself of same. Jase had the opportunity to present evidence and documentation. The Order on the Contested Case hearing and the record indicates that Jase did present

-7-

testimony, documentation, and the deposition of Joe Sheldon and Affidavits. The record in this case is extensive and indicates some 113 pages of testimony by Jason Usery, and 10 pages of testimony from his wife Suzanne Usery. Mr. Usery also testified on rebuttal. Three other witnesses testified for the Bureau for about 112 pages of transcript. A number of Exhibits were introduced into evidence, including the deposition of Joe Sheldon. The ALJ heard all of the testimony, reviewed the deposition and commented on the testimony of Mr. Sheldon….

\*\*\*

The Court finds that based on the entire record that Jase was engaged in construction services and employed Joe Sheldon as an employee and thus was subject to the State's Workers' Compensation Laws. The evidence revealed that Usery operated Jase, a business offering construction services which it advertised as construction management. It actively advertised its services. The advertisements talked about Jase's great projects, pictures of houses and plans, and the options and packages Jase was offering for framing new homes. It also advertised that Jase was now doing wood fence installation. Joe Sheldon testified that he worked for Jase and Jason Usery and was paid by them. In response, Jase produced an Affidavit of Mary Jordan [a company owner who worked with Jase on a referral basis] that to her knowledge, Jason Usery has not had any employees since he began working as a construction manager with Jase Enterprises. Jase also produced the Affidavit of Richard Usery, Jason Usery's father, and Joe Sheldon's neighbor. His Affidavit stated that he had loaned Joe Sheldon money and that Joe was working at the Beecham house where he got hurt to earn the money to pay him back. Jase was acting as construction manager for the Beecham's. He stated that after Sheldon got injured, that Jason and he also gave Sheldon money to help him pay his bills and that … Jason Usery did not have any employees to the best of his knowledge. He also stated that he knew that Jason Usery did not employ[ ] Sheldon when he got hurt. The ALJ had this information and assessed it in making his ruling. These issues were questions of fact as to whether Sheldon was working for Jason or Jase at the time of his injury. It was a question of fact as to whether Jason had employees. The ALJ found that Joe Sheldon was an employee of Jase and/or Jason. The evidence produced by Usery at the Contested Case hearing consisted mainly of his testimony, his wife's, the deposition of Joe Sheldon, and the two Affidavits. The ALJ had this information, the other testimony, and also the advertisements on Face Book.

Jase timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, Jase raises the following issues on appeal: 1) whether Jase was denied due process; 2) whether the penalty assessment against Jase was arbitrary, capricious, an abuse of discretion or clearly unwarranted exercise of discretion, or unsupported by substantial and material evidence; and 3) whether Jase should receive an award of attorney's fees and expenses incurred as a result of an improper penalty assessment.

Administrative final decisions are reviewed under the Uniform Administrative Procedures Act. Tenn. Code Ann. § 4-5-101, *et seq.*; *see Liberty Mut. Ins. Co. v. Tenn. Dep't of Labor & Workforce Dev.*, No. M2010-02082-COA-R3-CV, 2012 WL 11739, at *1-2 (Tenn. Ct. App. Jan. 3, 2012), *no appl. perm. appeal filed.* As applicable to the appeal at bar, Tenn. Code Ann. § 4-5-322(h) provided:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (West April 11, 2019 to May 17, 2021).[2] Substantial and material evidence has been defined as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and to furnish a reasonably sound basis for the decision under consideration." *City of Memphis v. Civ. Serv. Comm'n of City of Memphis*,

---

[2] This statute has since been amended.

238 S.W.3d 238, 243 (Tenn. Ct. App. 2007) (internal quotation marks and citations omitted).

We first address whether Jase was denied due process. In its brief, Jase argues that the penalty assessment process established in Tenn. Code Ann. § 50-6-412 violated its due process rights under the Fourteenth Amendment. Tenn. Code Ann. § 50-6-412 provided, in relevant part:

> (b) … (4) The administrator shall advise an employer of the amount of any assessed monetary penalty in writing and shall include the date on which the monetary penalty shall be due and payable.
> (c)(1) When the records of the bureau of workers' compensation indicate, or when the bureau's investigation of an employer indicates, that an employer is subject to this chapter, and has failed to secure payment of compensation as required by this chapter, the bureau shall so notify the employer by certified letter, return receipt requested.
> (2) The bureau shall require the employer to provide, within fifteen (15) calendar days of the receipt of the certified letter, either proof that the employer had secured payment of compensation as required by this chapter or a verifiable sworn affidavit, with supporting documentation, that the employer is exempt from this chapter.
> (3) The certified letter shall also advise the employer of the monetary penalties that may be assessed against the employer if it is determined by the administrator or the administrator's designee that the employer has failed to secure payment of compensation as required by this chapter and shall advise the employer of the criminal penalties to which the employer may be subject for the failure.
> (d)(1) If the employer responds to the certified letter within fifteen (15) calendar days of its receipt and the administrator or the administrator's designee determines that the employer has secured payment of compensation as required by this chapter, or that the employer is not subject to this chapter, no monetary penalty shall be assessed.
>
> ***
>
> (e) … (2) The administrator's or administrator's designee's decision shall notify the employer of all monetary penalties that have been assessed against the employer and the criminal penalties to which the employer may be subject.
> (3) The administrator's or administrator's designee's decision shall advise the employer that it may request a contested case hearing to show cause why

-10-

it should not have been assessed penalties for failure to comply with the workers' compensation law or to challenge the amount of the penalties assessed. Such a request must be made to the bureau in writing within fifteen (15) calendar days of receipt of the administrator's or administrator's designee's decision assessing monetary penalties. If such request is not timely made, the decision becomes final.

(4) The employer has the burden of proof at the contested case hearing and shall produce documentary evidence that the penalties should be reduced, that the employer is not subject to this chapter, or that the employer was in compliance with this chapter.

(5) The contested case hearing shall be scheduled to be heard in a timely manner, not to exceed forty-five (45) calendar days from the date of the employer's timely written request for a contested case hearing pursuant to subdivision (e)(3).

Tenn. Code Ann. § 50-6-412 (West May 4, 2015 to June 14, 2020).[3]

Jase also takes issue with Tenn. Code Ann. § 4-5-307, which governs notice for contested case hearings. Tenn. Code Ann. § 4-5-307 provides:

(a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

(b) In all proceedings the notice shall include:

(1) A statement of the time, place, nature of the hearing, and the right to be represented by counsel;

(2) A statement of the legal authority and jurisdiction under which the hearing is to be held, including a reference to the particular sections of the statutes and rules involved; and

(3) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon timely, written application a more definite and detailed statement shall be furnished ten (10) days prior to the time set for the hearing.

Tenn. Code Ann. § 4-5-307 (2021).

Jase cites certain factors relevant to our consideration of whether due process was observed in the administrative proceedings below, to wit: (1) the private interest affected; (2) the risk of erroneous deprivation and probable value of any additional or substitute

---

[3] This statute, too, has been amended since the penalty assessment against Jase.

procedural safeguards; and (3) the government's interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citation omitted). Jase notes that the penalty assessment against it impacts its ability to do business and earn a livelihood. Jase states that Tennessee's penalty assessment process grants the Bureau unfettered discretion; that there is no objective standard of proof; that the Bureau is not required to disclose the evidence that gave rise to the penalty; and that there is no burden of proof on the Bureau at the contested case hearing. Jase also contends that it should have received more detailed notice of the allegations against it, such as "how many workers, who, where did they work, what work did they perform…." Jase argues that the process should include the following safeguards: "(i) identification of specific facts and evidence supporting the Agency's preliminary assessment to the individual or entities who could be subject to penalty, (ii) explanation of the Agency's position with reference to specific facts and evidence and assessments of credibility before imposition of a penalty, and/or (iii) placement of the burden of proof at a contested case hearing on the Agency." For its part, the Bureau argues that Jase was afforded due process. The Bureau contends that Jase received adequate notice; that once the penalty was assessed, Jase was notified and informed it could request a contested case hearing, which it did; and that a contested case hearing was held at which Jase could and did present its case.

In *McClellan v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 688 (Tenn. 1996), the Tennessee Supreme Court stated that "[b]asic due process requires 'notice reasonably calculated under all the circumstances, to apprise interested parties' of the claims of the opposing parties." (Quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). A case from the United States District Court, N.D. New York, is instructive. In it, the United States Magistrate Judge wrote:

> Plaintiff's remaining due process claim is an official capacity, injunctive relief claim against Defendant Rodriguez [Chair of the New York Workers' Compensation Board] related to the imposition of the penalty for lack of workers' compensation coverage. As noted above, this claim concerns the lack of any process prior to the imposition of the penalty and the alleged insufficiency of post-deprivation process.
>
> Due process mandates that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)). In determining the process due, courts weigh (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009). "[D]ue process is flexible and calls for such procedural protections as the

particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Plaintiff's private interest here, "operating a business and ... pursuing a particular livelihood," is clearly a strong one. *Spinelli v. City of New York*, 579 F.3d at 171. "The government interest ... is likewise significant."

The other factor outlined in *Mathews* directs courts to consider "the risk of an erroneous deprivation of [the private] interest through the procedures used." *Krimstock v. Kelly*, 306 F.3d 40, 62 (2d Cir. 2002); *see also Redd v. Wright*, 2006 WL 6907552, at *7 (N.D.N.Y. Aug. 9, 2006) (identifying second factor as "the most important" one). The greater the risk of the potential error, the more pre-deprivation process that is due. *See, e.g., Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). By contrast, post-deprivation remedies "suffice where 'the nature of the issues at stake minimizes the risk' of wrongful deprivation." *Diaz v. Paterson*, 547 F.3d 88, 99 (2d Cir. 2008) (quoting *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 609 (1974)).

The particular question presented in this case, whether an employer has secured insurance, is not a particularly complex one which would involve significant factual or legal argument. In the mine run of cases the existence or non-existence of insurance would be a straightforward matter of providing proof of insurance coverage and is thus not one where the risk of erroneous conclusion absent a pre-deprivation hearing is high. *Campo v. New York City Employees' Ret. Sys.*, 653 F. Supp. 895, 899 (S.D.N.Y. 1987) ("the risk of erroneous deprivation in this case must be deemed minimal ... [where] the resolution of the plaintiff's claim revolves around documentary evidence"). In fact, "in situations such as these where decisions are 'sharply focused and easily documented' and are based on an objectively verifiable set of facts, providing an individual with notice and an opportunity to file a written response is sufficiently reliable." *City Line Auto Mall, Inc. v. Mintz*, 2006 WL 8439742, at *4 (E.D.N.Y. Oct. 25, 2006) (quoting *Mathews v. Eldridge*, 424 U.S. at 343).

In addition, "the risk of erroneous deprivation is mitigated by the availability of a prompt post-deprivation hearing." *Nnebe v. Daus*, 644 F.3d 147, 159 (2d Cir. 2011). New York's Workers' Compensation Law outlines a detailed post-deprivation procedure. The statute provides that an employer who wishes to challenge the imposition of a penalty imposed under Section 52 may seek "a redetermination review of such penalty." N.Y. Workers' Comp. Law § 52(5). In the event of an adverse determination on redetermination, the law provides for an appeal to be taken to the New York State Appellate Division, Third Department. N.Y. Workers' Comp. Law § 23; *see also* N.Y. Workers' Comp. Law § 52, Practice Commentaries. The

-13-

initial notice provided to Plaintiff made him aware of the availability of the initial step in the process, the request for review of the initial determination. Plaintiff availed himself of this right and filed a request for review with the WCB. That review concluded that Plaintiff was "not in compliance with the requirements for coverage." At the time of this request for review, the penalty that had been imposed against Plaintiff was $12,000. Plaintiff was subsequently advised that additional penalties were imposed, but Plaintiff does not claim, and there is no evidence in the record to suggest, that Plaintiff pursued this administrative remedy regarding the later penalties. Plaintiff concedes that he did not proceed to appeal that initial determination to the Appellate Division. This statutory regime, including the opportunity for review by a neutral court, provided ample due process. *Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 100 (2d Cir. 1988) ("Because a judicial hearing in a state court was available to [plaintiff] on timely demand, due process requirements for a post-deprivation hearing are met.").

"Particularly in property cases, post-deprivation remedies have been held adequate when they can make the aggrieved party completely whole." *Mohomed v. Vician*, 490 F. Supp. 954, 959 (S.D.N.Y. 1980). The availability of the post-deprivation review here could clearly have done so since a finding that Plaintiff did in fact have proper insurance would have meant he was not subject to the disputed penalty. This consideration bears particular weight here where Plaintiff has not yet actually paid any of the penalty imposed by the WCB nor have any funds been garnished by the WCB to satisfy the penalty.

Having balanced the public and private interests with the process that was provided to Plaintiff and that was available under state law, the Court concludes that sufficient notice and opportunity to be heard was provided such that no due process claim is stated.

*Cassidy v. Rodriguez*, 2021 WL 5028089, at *6-7 (N.D.N.Y. Sept. 30, 2021) (footnotes and internal record citations omitted).

In addition, this Court has stated as follows with respect to the minimum requirements of due process in administrative proceedings:

In administrative proceedings such as this, "the minimum requirements of due process must ... be satisfied when an agency's decision could adversely affect vested property interests or other constitutional rights." *Martin v. Sizemore*, 78 S.W.3d 249, 267 (Tenn. Ct. App. 2001). Although due process does not dictate particular procedures in every instance, administrative proceedings must afford affected parties 1) adequate

notice, 2) an opportunity for a hearing at a meaningful time and in a meaningful manner, and 3) an opportunity to obtain judicial review of the board's or agency's decision. *Id.* (internal citations omitted).

***

To satisfy the basic due process notice requirement, the notice provided to the offending party must be " 'reasonably calculated under all the circumstances, to apprise interested parties' " of the claims of the opposing parties. *McClellan v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 688 (Tenn. 1995) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The purpose of due process requirements is to notify the individual or organization in advance in order to allow adequate preparation and reduce surprise. *Id.* (citing *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14 (1978)).

*Liberty Mut. Ins. Co.*, 2012 WL 11739, at *5.

The preceding authorities reflect that due process is not a mechanical concept. Rather, what will suffice for purposes of due process may differ according to the nature of the proceedings at issue. Jase is correct in that, at minimum, it was entitled to sufficient notice and an opportunity to be heard. From our review of the record, it received both. Jase indisputably received notice sufficient to apprise it of the claims of the opposing parties. Jase has cited no law compelling the kind of richly detailed notice it says it was entitled to. The Bureau alleged that Jase had one or more employees subject to Tennessee's workers' compensation laws. Jase thus knew that the Bureau was proceeding against it for failure to secure workers' compensation insurance coverage. The additional details Jase demands would have been superfluous. Such details, were they to be necessary, could be borne out at the contested case hearing or by discovery, but they were not essential to Jase being apprised of the penalty it was facing and why. As it happened, Jase not only knew that the Bureau was proceeding against it and why—it requested a contested case hearing and made its case. It did so in extensive fashion, with considerable evidence entered into the administrative record. Jase had an opportunity to be heard and it took that opportunity. That Jase lost does not mean it was denied due process.

Jase argues further that the burden of proof was wrongly placed on it; that there was no objective standard of proof; and that it had to prove a negative, an impossible demand. However, this case involved an administrative proceeding, not a trial. Jase points to no law requiring that administrative proceedings must be conducted with the identical burden-placements and standards of proof as are attendant to trials. Our review of a final administrative decision is narrow and circumscribed by Tenn. Code Ann. § 4-5-322(h).

Nevertheless, it not totally deferential. If, for instance, the ALJ's ultimate conclusion that Jase had one or more employees subject to the workers' compensation law lacked substantial and material evidentiary support, that would be grounds for overturning his decision. Thus, there exists an objective standard upon which to review the ALJ's decision, as well as subsequent opportunities for judicial review. Jase had the opportunity to seek judicial review of the ALJ's decision with the Trial Court, and now with this Court on appeal. In sum, Jase had a full and fair opportunity to present its case. We hold that Jase was not denied due process.

We next address whether the penalty assessment against Jase was arbitrary, capricious, an abuse of discretion, a clearly unwarranted exercise of discretion, or unsupported by substantial and material evidence. On this issue, Jase argues that (1) the Tennessee Court of Workers' Compensation Claims has conclusively determined that Sheldon was not an employee of Jase and (2) the fact that Jase used plural pronouns in its advertising (i.e., referring to "us," suggesting employees besides Usery himself) does not constitute substantial and material evidence. With regard to his first argument, Jase moved for this Court to consider certain decisions by the Tennessee Court of Workers' Compensation Claims as post-judgment facts pursuant to Tenn. R. App. P. 14 to the effect that Sheldon was not an employee of Jase.[4] However, this Court denied Jase's motion by order entered May 16, 2022. In our order, we concluded that "[Jase] has failed to demonstrate how the facts [it] wishes this Court to consider are necessary to keep the record current" and "[m]ore significantly, the facts [Jase] wishes to now introduce go directly to the merits of this appeal." For the reasons we articulated in our order denying Jase's motion, we will not consider the post-judgment facts cited by Jase. We proceed to consider whether the ALJ's decision was supported by substantial and material evidence.

To reiterate, our standard of review is narrow. It is not for us to determine, as though for the first time, whether the Bureau was correct to assess a penalty against Jase. Rather, we apply the limited standard of review set out in Tenn. Code Ann. § 4-5-322(h). At issue is whether Jase employed one or more employees during the pertinent time period. Jase maintains it did not. The Bureau alleged Jase did. The ALJ, after hearing the evidence, agreed with the Bureau. To resolve this issue, we look to the administrative record. A major piece of evidence was Sheldon's deposition testimony. Jase points out that Sheldon's testimony was ambiguous in some areas, such as he did not know who certain other workers at the worksite were, or exactly who provided the tools. Nevertheless, this goes toward the weight of the evidence, and we are not to substitute our judgment for that of the ALJ. Sheldon testified that he worked for Jase; that he expected to be paid by Jase; and that he later received payments from Usery after being injured on the job. With respect

---

[4] In its Expedited Hearing Order entered December 30, 2019, the Tennessee Court of Workers' Compensation Claims held that "Mr. Sheldon did not establish he is likely to succeed in proving he was Usery's employee." Sheldon's claim was later dismissed for failure to prosecute.

to evidence showing that Jase used plural pronouns like "us" in advertisements—a practice Jase dismisses as just Usery having used "broad strokes" in communicating—this was indeed additional evidence from which the ALJ could render its decision. The ALJ did not base its decision solely on this evidence, but it was legitimate to consider it. "Us" implies more than one. Based upon the aforementioned relevant evidence, a reasonable mind could conclude that Jase had at least one other employee apart from Usery, thus furnishing a sound basis for the Bureau's assessment of a penalty against Jase for failure to secure workers' compensation insurance coverage. That the ALJ, or this Court, might have reached a different conclusion on the basis of this substantial and material evidence is beside the point under the applicable standard.

Finally, Jase argues that the ALJ was capricious in crediting Usery's testimony that he switched business entities because of a changed business model and purpose but failing to credit his testimony that he was a construction manager who does not have employees. However, this Court has explained: "When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result." *City of Memphis*, 238 S.W.3d at 243 (citations omitted). Jase points to no law in support of its contention that a witness cannot be found credible in some respects and not in others. On the contrary, it was the ALJ's prerogative to credit witnesses in part, in whole, or not at all. We find that, in light of the entire record, the ALJ's decision upholding the Bureau's penalty assessment against Jase was supported by substantial and material evidence. The ALJ's decision neither was arbitrary or capricious nor did it constitute an abuse of discretion or clearly unwarranted exercise of discretion.

The final issue we address is whether Jase should receive an award of attorney's fees and expenses incurred as a result of an improper penalty assessment. Jase relies upon Tenn. Code Ann. § 4-5-325, which allowed for an award of attorney's fees and expenses when a state agency's allegation of a violation was "not well grounded in fact and was not warranted by existing law, rule or regulation" or "[f]or an improper purpose such as to harass, to cause unnecessary delay or cause needless expense to the party cited." Tenn. Code Ann. § 4-5-325(a) (West, through May 11, 2021). However, we affirm the Trial Court, which upheld the penalty assessment against Jase. Thus, there is no basis under Tenn. Code Ann. § 4-5-325 for an award of attorney's fees and expenses to Jase. We, therefore, decline Jase's request for an award of attorney's fees and expenses. We affirm the judgment of the Trial Court in its entirety.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Jase Enterprises, LLC, and its surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE